[Civ. No. 68711. Second Dist., Div. Seven. Jan. 6, 1984.]

GEORGE RICHARD PLUMLEE, Plaintiff and Appellant, v.
JOHN POAG et al., Defendants and Respondents.

COUNSEL

C. Loy Mason and Jean Corey for Plaintiff and Appellant.

Pacht, Ross, Warne, Bernhard & Sears, Joel P. Schiff and Ina H. Lurvey for Defendants and Respondents.

## Opinion

**SCHAUER, P. J.**—Plaintiff Plumlee appeals from an order of dismissal entered after the court sustained defendants' general demurrer, without leave to amend, to appellant's second amended complaint for breach of contract. Two issues are before this court: First, whether Plumlee's claim is barred for failure to comply with the limitations period contained in Probate Code section 714; and second, whether the alleged oral contract is subject to the defense of the statute of frauds as contained in Civil Code section 1624, subdivisions 1 and 6. We will decide both issues in favor of Plumlee and reverse.

### Facts and Proceedings Below

Respondents Poag and Price are the appointed executors, and respondent Treharne the appointed administator-with-will-annexed, of the estate of Ben Weingart, who died on December 22, 1980. Following publication by respondents of the notice required by Probate Code sections 333 and 700.[1] Plumlee timely filed a creditor's claim against the estate for $180,000. He received notice of rejection of his claim pursuant to Probate Code section 714 on November 6, 1981.

On January 26, 1982 Plumlee filed a complaint for breach of contract in the Superior Court of Los Angeles County, naming as defendants "John Poag, Sol Price, [and] Gordon W. Treharne."[2] The complaint sought damages of $180,000 for breach in 1978 of a 1971 contract between Plumlee and Weingart whereby Plumlee was to be employed "until at least 10 years after the death of Ben Weingart." The complaint further alleged that following Weingart's death in December 1980 respondents Poag and Price were appointed executors, and respondent Treharne administrator-with-will-annexed, of Weingart's estate; and that notice of rejection of Plumlee's claim against the estate was received by him on November 6, 1981.

On April 6, 1982, Plumlee filed a first amended complaint of course pursuant to section 472 of the Code of Civil Procedure, identical to the original complaint save the addition of one clause to the alleged contract: The term of Plumlee's employment was to be until at least 10 years after Weingart's death, "*so long as [Plumlee] reduced the then existing annual*

---

[1]Probate Code section 333 requires publication of a "Notice of Death and of Petition to Administer Estate" (official form DE-121). Probate Code section 700 provides that publication of the notice required by section 333 "shall also constitute notice to the creditors of the decedent" for purposes of presentation of claims.

[2]Other named defendants are not parties on this appeal.

*shrinkage of Ben Weingart's linen supplies from a national average ranging from 17 percent to 25 percent annually to a lower level and continued to maintain a lower level."* (Italics supplied.)

Respondents demurred to the first amended complaint on the following grounds:[3] (1) That by naming respondents as defendants individually Plumlee failed to bring suit "against the executor or administrator" within three months after service of the notice of rejection of claim, as required by section 714 of the Probate Code;[4] and (2) that the alleged contract was unenforceable under the provisions of section 1624, subdivisions 1 and 6 of the Civil Code, which provide respectively that in the absence of some note or memorandum in writing subscribed by the party or his agent, agreements that by their terms are not to be performed "within a year from the making thereof," or "during the lifetime of the promissor," are invalid.

Respondents' demurrer was sustained with leave to amend. On June 16, 1982, appellant filed a second amended complaint, at issue on this appeal. The second amended complaint contained a change in the order of the allegations, specified that the alleged contract was oral, and alleged that the original complaint was filed within three months of the notice of rejection of claim.

Respondents' general demurrer under Code of Civil Procedure section 430.10, subdivision (e), to the second amended complaint was sustained, without leave to amend, on the same grounds as was their demurrer to the first amended complaint. Appellant's appeal is from the order of dismissal filed by the court on July 22, 1982.

■ "The function of a demurrer is to test the sufficiency of plaintiffs' pleading by raising questions of law. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 796, pp. 2408-2409.)" (*Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 818 [164 Cal.Rptr. 264].) On appeal our only concern is whether appellant has succeeded in stating a cause of action. We are not concerned with appellant's possible difficulty or inability in proving the allegations of his complaint. (*Highlanders, Inc.* v. *Olsan* (1978) 77 Cal.App.3d 690, 697 [143 Cal.Rptr. 679].) In assessing the sufficiency of the complaint against respondents' demurrer, we treat the demurrer as ad-

---

[3]We do not discuss additional asserted grounds for demurrer which were overruled by the trial court.

[4]Probate Code section 714 provides, in relevant part: "When a claim is rejected . . . written notice . . . shall be given by the executor or administrator to the holder of the claim or to the person filing or presenting it, and the holder must bring suit in the proper court *against the executor or administrator, within three months after the date of service of such notice . . .; otherwise the claim shall be forever barred."* (Italics supplied.)

mitting all material facts properly pleaded, and "we bear in our well established policy of liberality in reviewing a demurrer sustained without leave to amend: 'the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties.'" (*Glaire* v. *LaLanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].)

With these standards in mind, we examine whether Plumlee's second amended complaint states a cause of action against respondents.

## DISCUSSION

*A. Plumlee's claim is not barred for failure to bring suit within the three-month limitation period contained in Probate Code section 714.*

Plumlee received notice of rejection of his claim on November 6, 1981. His original complaint was filed within three months of that date, on January 26, 1982. Respondents contend, however, that by naming respondents in the caption of the complaint as individuals and not in their representative capacities, Plumlee has failed to bring suit *against the executor or administrator* within three months of receipt of the notice of rejection, as required by Probate Code section 714.[5]

We reject respondents' contention, which unduly places form over substance. "'Courts under the reformed system of procedure look to the substance of things rather than to form, and to persons and things rather than to mere names. This manner of treating things constitutes the life and spirit of the reformed system of procedure (*Anglo etc. Co.* v. *Turner Casing Co.*, 34 Kan. 340 [8 Pac. 404]). That system was designed to enable courts of justice to brush aside technicalities affecting no substantial right, and decide cases upon the merits.'" (*Lindsey* v. *Superior Court* (1929) 100 Cal.App. 37, 41 [279 P. 837].) Although the caption names respondents as individuals, the body of the original complaint clearly indicated that appellant's intention was to commence an action for the purpose of obtaining a judgment which could be satisfied from assets belonging to the decedent at the time of his death. The following allegation in appellant's original complaint discloses fully the exact character of the defendants: "8. Ben Weingart died on December 22, 1980. Thereafter defendants John Poag and Sol Price were appointed executors and Gordon W. Treharne was appointed Administrator-With-Will-Annexed of his estate. Plaintiff presented his creditor's claim for

---

[5]See footnote 4, *ante.*

$180,000 within the time and in the manner prescribed by law. On November 6, 1981, plaintiff received Notice of Rejection of Claim."

■ It has been uniformly held in our state that in order to determine the identity of a party courts are entitled to take into consideration the allegations of the complaint as well as the title. (*Miller* v. *Superior Court* (1914) 26 Cal.App. 41, 44 [146 P. 72]; *Lazar* v. *Estate of Lazar* (1962) 208 Cal.App.2d 554 [25 Cal.Rptr. 354]; *Lindsey* v. *Superior Court, supra,* 100 Cal.App. at p. 41; see also 7 Grossman & Van Alstyne, Cal. Practice (2d ed. 1981) Pleading, § 501, p. 2.) As stated by the court in *Nelson* v. *East Side Grocery Co.* (1915) 26 Cal.App.344, 347 [146 P. 1055], "[i]t should require no argument to sustain the view that in determining who the parties to an action are the whole body of the complaint is to be taken into account, and not the caption merely." The language of the court in *Hume* v. *Lacey* (1952) 112 Cal.App.2d 147 [245 P.2d 672] is particularly appropriate at bench: "While it has been frequently held that the use of the word administrator, alone, is merely *descriptio personae,* it has also been held that the body of the complaint . . . may and should be examined for the purpose of determining whether the action involves a party individually, or in a representative capacity. (*Burling* v. *Thompkins,* 77 Cal. 257 [19 P. 429]; *Carr* v. *Carr,* 15 Cal.App. 480 [115 P. 261]; *Minehan* v. *Silveria,* 131 Cal.App. 317 [21 P.2d 617].)" (At p. 149.)

■ We decide that Plumlee's complaint was one against respondents in their representative capacities. "Where full notice is given and a reasonably prudent person would realize that he is the party intended to be named as the defendant, the court should treat the mistake as harmless misnomer in order to promote substantive rights." (7 Grossman & Van Alstyne, Cal. Practice, *supra,* § 688, p. 180.) In the case at bench no one was deceived. The technical defect can be cured by amendment, making no change in the substance of the action, but merely setting forth correctly the representative capacities in which respondents are being sued. (See *Siegal* v. *Superior Court* (1962) 203 Cal.App.2d 22, 28 [21 Cal.Rptr. 348]; *Alvez* v. *Toprahanian* (1940) 39 Cal.App.2d 126, 128-129 [102 P.2d 566]; *Lindsey* v. *Superior Court, supra,* 100 Cal.App. 37.) Appellant was entitled to amend his complaint, and the amended complaint will be deemed filed as of the date of the original complaint. (*Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596 [15 Cal.Rptr. 817, 364 P.2d 681]; *Lazar* v. *Estate of Lazar, supra,* 208 Cal.App.2d at p. 560; *Lamont* v. *Wolfe* (1983) 142 Cal.App.3d 375 [190 Cal.Rptr. 874]; *Ingram* v. *Superior Court* (1979) 98 Cal.App.3d 483 [159 Cal.Rptr. 557]; 7 Grossman & Van Alstyne, Cal. Practice, *supra,* § 688, p. 180.)

B. *Plumlee's action is not barred by the statute of frauds as a matter of law.*

1. Civil Code section 1624, subdivision 1.

Section 1624, subdivision 1 of the Civil Code reads as follows: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent:

"1. An agreement that by its terms is not to be performed within a year from the making thereof . . ."

The contract alleged by appellant in his second amended complaint expressly provided that he was to be employed "until at least ten years after the death of Ben Weingart, so long as plaintiff reduced the then existing annual shrinkage of Ben Weingart's linen supplies from a national average ranging from 17 percent to 25 percent annually to a lower level and continued to maintain a lower level." As will appear, we are unable to conclude, at the demurrer stage in the proceedings, that the alleged contract is rendered unenforceable as a matter of law by section 1624, subdivision 1 of the Civil Code (hereafter subdivision 1).

 It is a well-established rule in California that an oral contract is invalid under subdivision 1 only where by its *very terms* it cannot be performed within a year from the date it is made. (*McKeany v. Black* (1897) 117 Cal. 587, 592 [49 P. 710]; *Hopper v. Lennen & Mitchell, Inc.* (9th Cir. 1944) 146 F.2d 364 [161 A.L.R. 282].) The words of subdivision 1 have been interpreted literally and narrowly by our courts. Only those contracts which expressly preclude performance within one year are unenforceable. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 214, p. 193.) In *White Lightning Co. v. Wolfson* (1968) 68 Cal.2d 336 [66 Cal.Rptr. 697, 438 P.2d 345], our Supreme Court stated: "'In its actual application . . . the courts have been perhaps even less friendly to this provision [the one year section] than to the other provisions of the statute [of frauds]. They have observed the exact words of this provision and have interpreted them literally and very narrowly . . . . To fall within the words of the provision, therefore, the agreement must be one of which it can truly be said *at the very moment it is made,* "This agreement is not to be performed within one year"; in general, the cases indicate that *there must not be the slightest possibility that it can be fully performed within one year.*' (Italics added.) (2 Corbin on Contracts, § 444, at pp. 534-535.)" (68 Cal.2d at p. 343, fn. 2; see also *Connelly v. Venus Foods, Inc.* (1959) 174 Cal.App.2d 582, 586 [345 P.2d 117].) Accordingly, if by its terms perfor-

mance of a contract is possible within one year, the contract does not fall within the statute even though it is probable that it will extend beyond one year. (*J. C. Millett Co.* v. *Park & Tilford Distillers Corp.* (N. .D. .Cal. 1954) 123 F.Supp. 484, 494; *Hopper* v. *Lennen & Mitchell, Inc., supra,* 146 F.2d at pp. 366-367; *McKeany* v. *Black, supra,* 117 Cal. 587; *Stewart* v. *Smith* (1907) 6 Cal.App. 152 [91 P. 667]; *Hellings* v. *Wright* (1916) 29 Cal.App. 649 [156 P. 365]; *Mayborne* v. *Citizens Trust & Savings Bank* (1920) 46 Cal.App. 178 [188 P. 1034]; *Kressly* v. *District Bond Co.* (1934) 138 Cal.App. 565 [32 P.2d 1112]; *Banta* v. *Rosasco* (1936) 12 Cal.App.2d 420 [55 P.2d 601].) A contract is invalid only if "by its terms, [it is] *impossible* of performance within a year." (*Blaustein* v. *Burton* (1970) 9 Cal.App.3d 161, 185 [88 Cal.Rptr. 319], italics added.) It is not invalid unless it contains language "whose reasonable interpretation shows a clear intention that it cannot be performed within the year (*Hollywood M.P. Equipment Co.* v. *Furer,* 16 Cal.2d 184, 187 [105 P.2d 299])." (*Keller* v. *Pacific Turf Club* (1961) 192 Cal.App.2d 189, 195-196 [13 Cal.Rptr. 346].)

■ We must therefore examine the contract at bench to determine if, by its terms, it could have been "performed" within one year from its making.

The contract as alleged in Plumlee's original complaint, providing for his employment "until at least 10 years after the death of Ben Weingart," was clearly unenforceable, as its terms expressly precluded performance within a year. The contract as alleged in the second amended complaint, while containing the same basic term of employment, embraced the additional clause, "so long as [Plumlee] reduced the then existing annual shrinkage of . . . supplies . . . to a lower level . . ." Does the addition of this "shrinkage reduction" clause take the contract out of the operation of subdivision 1? As will appear, our answer is in the affirmative at the demurrer stage of the proceedings. Interpreting the allegations of the complaint liberally, as we must, we cannot say as a matter of law that the contract as amended could not be performed within a year.

Although the "shrinkage reduction" clause must be interpreted to give Weingart (and perhaps even Plumlee) the right to terminate the contract in the event that Plumlee did not perform as required, we must determine, in light of the use of the term *annual* shrinkage, whether Weingart could have terminated the contract within a year. The most reasonable inference from the language in the contract is that at the completion of the first year the parties would determine whether the condition had been complied with and, if not, Weingart could terminate the contract immediately. Hence the min-

imum term of the contract is the permissible maximum for an oral contract, namely, one year.[6]

Moreover, the use of the term *annual* shrinkage does not wholly foreclose the possibility of a determination, *before* a year had elapsed, that Plumlee had not complied with the condition or that it would be mathematically impossible for him to be in compliance at the end of the first year, giving Weingart the right to terminate the contract as of the end of the year, or even earlier.

We must now consider whether termination of the agreement by Weingart for noncompliance with the "shrinkage reduction" condition would have constituted *performance* of the contract within a year (in which case subdivision 1 would not apply), or whether such termination would merely have *excused nonperformance* (in which case the contract would fall under the statute).

Although the majority of jurisdictions have held that a party's option to put an end to a contract within a year does not take it out of the operation of the statute of frauds, on the grounds that to be discharged from liability under a contract is not to "perform" it,[7] the California rule is to the contrary: A contract, otherwise within subdivision 1, may be taken out of its operation by the fact that a party (or at least a defendant) may rightfully terminate it within a year. (1 Witkin, Summary of Cal. Law (8th ed. 1973) § 218, p. 195; *White Lightning Co.* v. *Wolfson, supra,* 68 Cal.2d at p. 344; *Dutton Dredge Co.* v. *United States Fidelity & Guaranty Co.* (1934) 136

---

[6]We recognize the possibility that it might not have been possible to measure Plumlee's compliance with the condition until after the end of a year from the date the contract was made. But such event would not prevent the enforceability of the contract unless respondents can prove that it would foreclose completion of appellant's *performance* within one year. On demurrer, however, we do not assume the necessity of more than one year to test and terminate the agreement. (See *White Lightning Co.* v. *Wolfson, supra,* 68 Cal.2d 336 (subdivision 1 held inapplicable to oral contract of employment on a "permanent" basis, providing for partial compensation by a percentage of employer's annual gross sales which could not be computed until after the end of one year); see also *Pecarovich* v. *Becker* (1952) 113 Cal.App.2d 309, 315-316 [248 P.2d 123].)

[7]"The point in Williston on Contracts, Rev. Ed., Vol. 2, § 498, is treated as follows: 'Promises subject to an express defeasance or providing for alternative performance. The distinction between an excuse for not performing and completion of performance . . . is taken in contracts requiring for their performance a period exceeding a year but which are subject to a right of defeasance, not by operation of law but by the express terms of the contract, within the period of a year, as a contract for several years' service containing a provision permitting termination by either party on a week's or a month's notice. Such contracts are generally held within the Statute." (*Hopper* v. *Lennen & Mitchell, Inc., supra,* 146 F.2d at p. 365.) The following cases illustrate the majority rule: *Meyer* v. *Roberts* (1885) 46 Ark. 80; *White* v. *Simplex Radio Co.* (1939) 188 Ga. 412 [3 S.E.2d 890]; *Deevy* v. *Porter* (1953) 11 N. J. 594 [95 A.2d 596]; *Union Car Advertising Co.* v. *Boston Elevated Ry. Co.* (1st Cir. 1928) 26 F.2d 755.

Cal.App. 574 [29 P.2d 316]; *J. C. Millet Co.* v. *Park & Tilford Distillers Corp., supra,* 123 F.Supp. at p. 494.) In *Hopper* v. *Lennen & Mitchell, Inc., supra,* 146 F.2d 364, the plaintiff agreed to appear on radio programs for the defendant for five years, divided into periods of twenty-six weeks. The defendant was authorized to terminate the employment on notice given one month before the end of any twenty-six week period. Applying California Law, the Ninth Circuit Court of Appeals held that the contract was not within subdivision 1 because the contract, upon the exercise of the option, could have been fully performed within one year. The court quoted from *Blake* v. *Voight* (1892) 134 N.Y. 69 [31 N.E. 256, 257], as follows: "'. . . The permission [to terminate the contract in June] was part of the agreement, and effective action under it was performance of that part. The contract could be performed in either of two ways: (1) By performance according to its terms without exercising the option; (2) by performance according to its terms until June, and then exercising the option. *By either mode the contract would be fulfilled in a sense originally contemplated by the parties, and by neither would performance be frustrated, because the contract would be executed in a way that the parties agreed that it might be executed. The contingency did not defeat the contract, but simply advanced the period of fulfillment.*'" (146 F.2d at p. 366; italics added.) The *Hopper* court also quoted from *Johnston* v. *Bowersock* (1900) 62 Kan. 148 [61 P. 740, 744], as follows: "'. . . Moreover, the performance of a contract can be nothing more than a carrying out of its terms,—an adherence to its provisions,—and, if a termination of it be authorized by the language employed by the parties, then, said termination being permitted, the exercise of the right so to do is certainly not a breach of the contract upon the part of the party asserting the right to abrogate it, and, *if not a breach, it must be a performance. If the contract permits its destruction by the parties, that destruction is merely carrying out the terms of the agreement, and nothing more.*'" (*Ibid.*; italics added.)

Although we are not unmindful of the compelling logic of the majority view, we follow stare decisis and conclude that under the minority California rule the contract we consider is not invalid under the statute of frauds as being "an agreement that by its terms is not to be performed within a year from the making thereof."

2. Civil Code section 1624, subdivision 6.

Our analysis of the effect of subdivision 1 on the contract alleged by appellant also disposes of the application of section 1624, subdivision 6, which requires a writing where a contract ". . . by its terms is not to be performed during the lifetime of the promissor . . . ." At the time the contract was made, the possibility existed that Plumlee might be in noncompli-

ance with the "shrinkage reduction" condition before Weingart's death, and Weingart could have then terminated the contract. Upon that event, under the minority California view, the contract would have been fully performed before the death of Ben Weingart. Thus, at least upon this review after demurrer, the contract is not within the statute of frauds.

The judgment (order of dismissal) is reversed.

Thompson, J., and McVittie, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 29, 1984.

*Assigned by the Chairperson of the Judicial Council.