[No. F005304. Fifth Dist. Jan. 26, 1987.]

CATHERINE STEWARD, Plaintiff and Appellant, v.
MERCY HOSPITAL, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II and IV.

**COUNSEL**

Goldberg, Fisher & Quirk and Arthur F. Fisher for Plaintiff and Appellant.

Clifford, Jenkins & Brown and Patrick J. Osborn for Defendant and Respondent.

**OPINION**

MARTIN, J.—Plaintiff, Catherine Steward, filed a complaint on November 30, 1983, against defendant, Mercy Hospital (Hospital), which alleged a cause of action for wrongful discharge, breach of the implied covenant of good faith, violations of Labor Code sections 1050, 1052 and 1054[1] and

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

racial discrimination. The Hospital's demurrer to the complaint was sustained with leave to amend.

Plaintiff filed a first amended complaint on April 16, 1984, which contained allegations of wrongful discharge, breach of implied covenant of good faith and violations of sections 1050, 1052 and 1054. Thereafter, a demurrer was sustained with leave to amend as to the first amended complaint.

On September 14, 1984, a second amended complaint was filed which set forth the same three causes of action as had appeared in the first amended complaint. General and special demurrers were filed against the second amended complaint. The special demurrer was sustained for uncertainty as to the first and third causes of action and was sustained generally as to the first and second causes of action, the court holding the allegations were barred by the statute of frauds. The demurrers were sustained without leave to amend, resulting in the dismissal of the action. Judgment was entered in favor of Hospital on January 14, 1985.

Plaintiff filed a timely notice of appeal on February 15, 1985.

FACTS

The facts as alleged in the second amended complaint are as follows:

Plaintiff commenced an employee/employer relationship with Hospital pursuant to an oral agreement in February of 1965, working for Hospital as a nurse's attendant at that time, and became a permanent employee of Hospital. The implied terms of the agreement provided that after completion of a probation period of 90 days such employment would become permanent and would remain so, provided her performance was satisfactory, and plaintiff would not be discharged without good cause.

Plaintiff duly performed all the conditions required of her by the oral agreement and remained employed as a nurse's attendant until November 23, 1974, when plaintiff sustained an on-the-job back injury. Plaintiff continued to engage in and pursue her employment as a nurse's attendant until May of 1979 when, due to a herniated disk caused by her employment, plaintiff was forced to undergo surgery.

"Plaintiff did not want to discontinue working for defendant, MERCY HOSPITAL; however, upon medical advice and orders, plaintiff, although the employer/employee relationship continued, did discontinue performing the duties of a Nurse's Attendant, for the time being, so that she could be trained

for work that she could perform with her back condition limitations. If plaintiff had not sustained the aforesaid back injury plaintiff would have continued to work at defendant, MERCY HOSPITAL, in her position as a Nurse's Attendant for the remainder of her working life. As soon as plaintiff had been retrained and rehabilitated to perform work, that took into account her back condition, plaintiff requested defendant, MERCY HOSPITAL, to allow her to perform work in the capacity of a Laboratory Assistant/Phlebotomist. Such request was granted, on a part-time basis, in August, 1982. Plaintiff was originally hired to work 24 hours per week. Thereafter, due to plaintiff's satisfactory performance of her duties as a Laboratory Assistant/Phlebotomist, defendant, MERCY HOSPITAL, increased plaintiff's hours to 32 hours per week, which work performance continued until November 1, 1982, when plaintiff was summarily discharged."

Plaintiff further alleged that during the employment of plaintiff by Hospital, said Hospital had promulgated written rules, regulations and policies, some of which were distributed to the employees in the form of an "Employee Handbook" which provided, in substance, employees could not be discharged without good cause and such discharge could not be based upon grounds which were arbitrary or unreasonable and, further, that prior to suspension or dismissal, discussions of the alleged misconduct would take place between the employee and his or her supervisor or department manager which could result in verbal or written warnings initially being given, written reprimands after serious consideration and for serious reasons and, if continuing problems were found to exist, more severe action such as suspensions or dismissals could be given to employees.

The following quote from the "Employee Handbook" was alleged:

"DISCIPLINARY ACTION

"Excessive absenteeism, insubordination, abusive conduct, etc. (See Page 14) may result in disciplinary action by your supervisor or department manager, who will meet with you privately and discuss with you. This action may take the form of verbal or written warnings. Wrtten [sic] reprimands are given only after serious consideration and for serious reasons. Continuing problems may result in more severe action, such as suspensions or dismissals.

"DISMISSALS

"Mercy Hospital carefully considers the dismissal of any employee. This provides you with protection against arbitrary or unreasonable discharge."

Plaintiff was discharged on or about November 1, 1982, on the basis she had "switched or mislabeled" certain vials of blood extracted by plaintiff

from certain hospitalized patients. The pleading contains a denial of the charge and alleges the charge was merely a "pretext" put forth by Hospital to "mask and hide" the true, arbitrary, and unreasonable motives for plaintiff's termination, in violation of the express written policies of Hospital.

Plaintiff alleges that from 1965 until November of 1982 she had received favorable work evaluations, both verbal and written, from Hospital, and at no time did Hospital, verbally or in writing, express personally to plaintiff any substantial or major criticism of plaintiff's work.

In the second cause of action, plaintiff realleges and incorporates the allegations of the first cause of action and, in addition, alleges there existed an implied covenant of good faith and fair dealing in the employment agreement between plaintiff and Hospital which Hospital breached by their failure to observe the alleged rules and regulations with respect to disciplining, suspension and discharge of an employee by summarily discharging plaintiff without good cause near the end of her probationary period for her position as laboratory assistant/phlebotomist and, in addition, upon the completion of plaintiff's rehabilitation program which trained her for her position as laboratory assistant/phlebotomist, Hospital, its agents and employees, "intentionally and without good cause and with ill will towards the plaintiff caused prospective employers to be informed that plaintiff was undependable, unreliable and during her employment with defendant, MERCY HOSPITAL, had a number of absences which were not excused."

For the third cause of action, plaintiff realleges and incorporates the allegations of the first cause of action and further alleges Hospital, its agents and employees, falsely informed third parties plaintiff was "undependable, unreliable, and had a number of unexcused absences" while employed by Hospital. Plaintiff alleges this misinformation was disseminated by Hospital in violation of sections 1050, 1052 and 1054 when plaintiff was seeking employment as a laboratory assistant/phlebotomist between October 1981 and June 1982.

### DISCUSSION

■ The party against whom a complaint has been filed may object by demurrer to the pleading where it does not state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) If the demurrer was properly sustained on any ground, then the lower court will be affirmed. (*Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 422 [190 Cal.Rptr. 400].) However, sustaining a general demurrer without leave to amend is an abuse of discretion if it appears from the pleading there is a reasonable probability the defect could be cured by amendment under applicable substantive law.

(*Vater* v. *County of Glenn* (1958) 49 Cal.2d 815, 821 [323 P.2d 85]; *Sackett* v. *Wyatt* (1973) 32 Cal.App.3d 592, 603 [108 Cal.Rptr. 219].)

I., II.*

. . . . . . . . . . . . . . . . . . .

### III. STATUTE OF FRAUDS

The first and second causes of action are premised on an alleged oral agreement which defendant asserts and the lower court decided is barred by the statute of frauds citing *Newfield* v. *Insurance Co. of the West* (1984) 156 Cal.App.3d 440, 446-447 [203 Cal.Rptr. 9].

As codified in Civil Code section 1624, subdivision (1), the statute of frauds provides that an oral contract is unenforceable if "by its terms" it will not be performed within one year. California courts have long held that oral employment contracts without termination dates are nonetheless enforceable because they can be performed in less than a year, even if the job actually lasts longer. (*White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336, 344-346 [66 Cal.Rptr. 697, 438 P.2d 345].) Thus, upon the weight of authority, *Newfield* constitutes a minority view.

In *Newfield,* the appellant alleged an oral contract for "permanent" employment. (*Id.* at p. 446.) Despite the traditional view that such a contract could conceivably be performed within one year by termination of the employment agreement by one party or the other and thus not subject to Civil Code section 1624, subdivision (1), the Second District Court of Appeal stated: "Appellant cannot have it both ways. Either his employment relationship was a contract in which both parties had equal rights to terminate at will (in which case it was not a violation of the statute of frauds), or it was a contract where the employer did not have the right to terminate at will, and there was a reasonable expectation of employment for more than one year (in which case the statute of frauds does apply, barring this action)." (*Ibid.*)

Since appellant Newfield was, according to the Second District, taking the position the contract expressly or impliedly guaranteed him employment for a period longer than one year, it concluded the alleged contract was for employment for longer than one year. Thus, the Second District held the statute of frauds applied to bar the action. (*Id.* at p. 447.) Newfield's petition for a hearing by the Supreme Court was denied July 11, 1984.

---

*See footnote on page 1290, *ante.*

The reasoning of *Newfield* in this regard, and perhaps that of the Supreme Court in denying the petition for hearing, appears to rely on that particular agreement which is characterized as a contract for "permanent" employment, but that characterization may be misleading. (*Pugh* v. *See's Candies, Inc.*, [1981] 116 Cal.App.3d 311, 325 (171 Cal.Rptr. 917)].) *Pugh* noted that "[i]n one of the earliest California cases on this subject, the Supreme Court interpreted a contract for permanent employment as meaning 'that plaintiffs' employment . . . was to continue indefinitely, and until one or the other of the parties wish, *for some good reason,* to sever the relation.' (*Lord* v. *Goldberg* [(1889)] 81 Cal. 596, 601-602, italics added.)" (*Ibid.*) *Pugh* recognized a contract which limits the power of the employer with respect to reasons for termination is no less enforceable because it places no equivalent limits upon the power of the employee to quit his employment. (*Ibid.*) Thus, such a contract is capable of being performed within one year, for even though the employer may not be permitted to terminate an employee without good cause, good cause may exist within one year and, also, the employee may still terminate at will, i.e., within one year of formation of the contract. Therefore, since the employment contract in the instant case is capable of being performed within one year, it falls outside the statute of frauds and is not barred.

## IV.  VIOLATION OF LABOR CODE PROVISIONS*

. . . . . . . . . . . . . . . . . . .

The judgment is reversed and remanded for further proceedings as to all causes of action in accordance with the views expressed herein. Plaintiff to recover her costs on appeal.

Franson, Acting P. J., and Woolpert, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 15, 1987.

*See footnote on page 1290, *ante.*