*121 OPINION OF THE COURT
Edward H. Lehner, J.
The central issue on this motion by defendants for summary judgment is whether New York or English law is applicable to determine the enforceability of an alleged oral contract for the purchase of artwork made in England between a New York resident and an English art gallery.
In June 1991 defendant Edwin Cohen, chairman of defendant General Atlantic Corporation, attended an antiques fair in London, England. While there, Cohen spoke with an employee of plaintiff about the possibility of purchasing six pieces of the exhibited art. Although Cohen admits that he looked into the possible purchase of the art, he denies that he made a commitment to make an acquisition. It is undisputed that defendants never took possession of any art or signed a writing with respect thereto.
After returning to New York, defendants received an invoice requesting payment of $33,968 for the purchase of works of art, to which they did not respond. On June 25, 1993, after notice to the defendants, plaintiff sold one of the pieces and reduced the amount allegedly owing to $32,768.
The complaint herein asserts causes of action under both New York and English law. The motion before the court seeks a dismissal of the causes of action under New York law as barred by the Statute of Frauds, and the cause of action under English law for failure to adequately allege such law. Plaintiff cross-moved to amend its complaint to plead the necessary foreign law. At oral argument, that application was granted on consent and the branch of defendants’ motion to dismiss for failure to adequately plead the foreign law was withdrawn. Thereafter, both parties submitted memoranda as to the appropriate law to be applied, with plaintiff maintaining that English law governs and defendants urging the law of the forum.
DISCUSSION
In determining the law applicable to matters bearing upon the execution, interpretation, validity and performance of a contract, the modern approach is to apply the law of the jurisdiction having the greatest interest in the litigation (Matter of Allstate Ins. Co. [Stolarz], 81 NY2d 219 [1993]; Intercontinental Planning v Daystrom, Inc., 24 NY2d 372 [1969]; Auten v Auten, 308 NY 155 [1954]). In Auten v Auten (supra, at 160-161), it was stated that the theory of " 'grouping of contacts’ "instead *122 of regarding as conclusive the parties’ intention or the place of making or performance, lay emphasis rather upon the law of the place 'which has the most significant contacts with the matter in dispute’ * * * [T]he merit of [this] approach is that it gives to the place 'having the most interest in the problem’ paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction 'most intimately concerned with the outcome of [the] particular litigation’.”
In Allstate Ins. Co. (Stolarz) (supra, at 227), the Court cited with approval Restatement (Second) of Conflict of Laws § 188 (2), to the effect that when determining choice of law the "five generally significant contacts in a contract case [are]: the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties”.
Applying these criteria, it appears that, on balance, England has a greater interest in this matter. While defendants are New York residents, the place of the alleged negotiation and contracting is England, and the art is located in there as is plaintiff’s place of incorporation and place of business. Cohen traveled there to attend the antiques fair, and England has an interest in enforcing contracts made there by its citizens doing business in the country. When a person travels abroad it is not unfair that they subject themselves to the laws of the land to which they visit.
While the court finds that England has a greater interest in the subject of this litigation, defendants assert that such law <which allegedly does not require a writing for the enforcement of the subject contract) should not be applied in light of the public policy of New York in requiring a writing in order to enforce a contract for the sale of goods for a price in excess of $500 (UCC 2-201).
It is recognized that notwithstanding that a proper application of conflict of laws principles suggests the application of foreign law, New York law may still be applied if the foreign law violates a strong public policy of this State. With respect to the Statute of Frauds, in its 1969 decision in Intercontinental Planning v Daystrom, Inc. (supra, at 381), our Court of Appeals wrote: "Whether or not a contract, valid and enforceable in the jurisdiction where made, is subject to the Statute of Frauds of a jurisdiction where an action is brought upon the contract is a question not yet settled in this State”. In that case, which involved the applicability of General Obligations Law § 5-701 *123 (former [10]) (which requires a writing in order to enforce a contract for a finder’s fee), the Court criticized the test of examining whether the foreign Statute of Frauds was substantive or procedural, finding that such characterization "does little more than restate the problem and has even less relevance to our modern approach to the conflict of laws” (at 381). There the Court traced the legislative history of the statute and, noting that it "is common knowledge that New York is a national and international center for the purchase and sale of businesses and interests therein” (at 383), concluded that the statute contributed to New York’s economic development, which it opined constituted a strong State interest. In that case, however, most of the negotiations took place in New York and the Court ruled that "[t]hese contacts give New York a substantial interest in applying its own law in view of the policy underlying the applicable provision of our Statute of Frauds to protect principals in business transactions from unfounded claims and thereby encourage use of New York as a national and international business center” (at 384-385).
"In search of the public policy of the State, courts of course are not free to indulge in mere individual notions of expediency and fairness but must look to the law as expressed in statute and judicial decisions” (Ehrlich-Bober & Co. v University of Houston, 49 NY2d 574, 580 [1980]). In Cooney v Osgood Mach. (81 NY2d 66 [1993]), it was recently stated that "if New York statutes * * * were routinely read to express fundamental policy, choice of law principles would be meaningless”. The Court concluded that in "view of modern choice of law doctrine, resort to the public policy exception should be reserved for those foreign laws that are truly obnoxious” (at 79).
With respect to General Obligations Law § 5-701 (a) (2) (Statute of Frauds provision requiring a writing for an enforceable guarantee), in Finnish Fur Sales Co. v Juliette Shulof Furs (770 F Supp 139 [SD NY 1991]), it was ruled that the section would not be a bar to a purchase of personal property at auction in Finland in that its requirements "do not constitute a 'fundamental policy’ for the purpose of choice of law analysis” (at 146). (See also, Russell v Societe Anonyme des Establissements Aeroxon, 268 NY 173 [1935] [where the court implied that if foreign law had been pleaded, the New York Statute of Frauds section involved therein (which was the predecessor of UCC 2-201) may not have been a bar to the enforcement of an oral contract made in Belguim]; Restatement [Second] of Conflict of Laws § 187, comment g [where it was stated that *124 "fundamental” policy of a State which would bar enforcement of a foreign statute "will rarely be found in a requirement, such as the statute of frauds, that relates to formalities”].)
The court concludes that the UCC provision pertaining to the enforcement of a contract for the sale of goods does not represent such a strong public policy that the courts of this State should deny enforcement of an oral contract that is enforceable where made. There is nothing, per se, "obnoxious” in granting enforcement of an oral agreement. No parallel can be made to the public policy seeking protection of our State’s economic development as referred to in Intercontinental Planning v Daystrom, Inc. (supra). Hence, since it cannot be said that the policy underlying our law on sales outweighs the interest of England in enforcing oral contracts made in that country by merchants doing business there, English law will determine the enforceability of the oral contract sued upon herein.
Accordingly, defendants’ motion is granted solely to the extent of dismissing the causes of action asserted under New York law, and this action shall proceed applying the substantive law of England.
In light of the amount in controversy, this action is transferred to the Civil Court pursuant to CPLR 325 (d).