David M. EHRLICH, d/b/a DME Management, formerly DuKane Management, Plaintiff,

v.

Robert DIGGS, professionally known as RZA and Prince Rakim, Defendant.

No. 98 CV 7497(RJD).

United States District Court, E.D. New York.

Oct. 17, 2001.

---

Michael J. Gerstein, New York City, for plaintiff.

Nicole Page, Scarola & Reavis, New York City, for defendant.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

Plaintiff David M. Ehrlich, a manager of musical groups, seeks a portion of defendant Robert Diggs's earnings arising from his activities as a member the Gravediggaz, a rap music group, and as a solo artist. Defendant moves to dismiss and, in the alternative, for summary judgment. The critical issues raised concern the enforceability of an oral management contract between plaintiff and the Gravediggaz. The resolution of this question, and the appropriateness of dismissal or of summary judgment, depends on the choice of law to be applied.

## BACKGROUND

Plaintiff David Ehrlich is a manager of musical groups and an attorney. He conducts business under the name DME Management, and he formerly worked under the name DuKane Management. Plaintiff is a resident of California and is admitted to practice law in New York. Defendant Robert Diggs is a popular rap artist, professionally known as RZA and Prince Rakim.[1] He is a resident of New York. Although defendant maintains an affiliation with his original musical group, known as the Gravediggaz, he has gone on to an extremely successful career as a solo recording artist, producer and member of another rap group, the Wu Tang Clan.

On July 1, 1993, plaintiff and the Gravediggaz entered into a written contract under which the Gravediggaz retained plaintiff as their exclusive representative in negotiating a record contract with a major record label (the "Shopping/Finders Agreement"). On July 2, 1993, allegedly as a result of plaintiff's efforts, the Gra-

---

1. Defendant is known by many names in the rap music world. He is currently referred to as "RZA," a name which originated when he was a member of the rap group known as the "Gravediggaz." Defendant no longer uses the name Prince Rakim.

vediggaz entered into a written contract with Gee Street Records (the "Gravediggaz/Gee Street Contract"). This contract contains a provision giving Gee Street an option for the recording services of defendant as a solo artist. *See* Ehrlich Aff. ¶ 38.

In August 1993, plaintiff was hired as the manager of the Gravediggaz pursuant to an oral agreement (the "Management Agreement"). *See* Ehrlich Aff. ¶¶ 15–23. The Management Agreement was never reduced to writing. Plaintiff claims that he was to receive fifteen percent of the gross earnings of the Gravediggaz and each of its members for "all entertainment-related employment, engagements or agreements commenced or entered into" while he served as manager of the group. In addition, the Management Agreement was terminable by either plaintiff or the group at any time. *See* Ehrlich Aff. ¶ 23. The enforceability of this oral contract is the primary focus of this dispute. Plaintiff contends that the duties of a manager, including the duty to advise and counsel each member of a group individually, are universally known in the music recording industry and that these understandings were shared by all parties, including defendant, at the time the oral Management Agreement was made. *See* Ehrlich Aff. ¶¶ 18–23. Moreover, according to plaintiff, it is standard industry practice that the manager of a musical group is entitled to commissions on entertainment-related work by each member of the group, whether performed individually or performed as a group member. *See* Complaint ¶ 13; Ehrlich Aff. ¶¶ 31–33.

On December 20, 1996, defendant entered into a written contract with Gee Street as a solo recording artist (the "Gee Street/Diggs Contract"). Defendant argues that this contract is independent of the earlier relationship between plaintiff and defendant. Plaintiff counters that the option given to Gee Street for defendant's individual recording services at ¶ 22 of the Gravediggaz/Gee Street Contract was largely the result of discussions between plaintiff and defendant regarding the possibility of defendant working solo and was negotiated by plaintiff at defendant's specific request. *See* Ehrlich Aff. ¶ 38. Because defendant ultimately contracted with Gee Street to record as an individual, the 1993 Gravediggaz/Gee Street Contract and the 1996 Gee Street/Diggs Contract are, according to plaintiff, "inextricably linked." *See* Ehrlich Aff. ¶ 39.

The complaint asserts five claims based on the written and oral contracts between the parties relating to periods in which defendant was a member of the Gravediggaz as well as subsequent periods in which defendant was a solo artist and member of the Wu Tang Clan. In the first claim, plaintiff seeks commissions based on defendant's earnings from individual work, both as a recording artist and as a producer. In the second claim, he seeks a portion of the "ancillary sums" earned by defendant as a result of defendant's work as a member of the Gravediggaz. Plaintiff seeks a percentage of earnings from defendant's production of two Gravediggaz albums and direction of a Gravediggaz music video in the third claim. In the fourth claim, plaintiff seeks an accounting of all sums of money received by defendant and seeks commissions due on such sums as a result of his efforts. Finally, in the fifth claim, plaintiff seeks damages for substantial cost overruns and depressed album sales suffered as a result of defendant's late or canceled appearances for Gravediggaz tours, concerts, events, recording and video sessions.

Defendant moves to dismiss the claims based on the written Shopping/Finders Agreement on the grounds that New York law precludes a person not acting under

proper license from receiving a fee for arranging a recording contract. In addition, he claims that the plain language of the Shopping/Finders Agreement does not entitle plaintiff to a portion of the earnings from defendant's solo career. Defendant moves to dismiss the claims based on the oral Management Agreement also on the grounds that it does not entitle plaintiff to a percentage of defendant's earnings from his individual work. In addition, he argues that the terms of the Management Agreement as alleged are too indefinite to be enforced. Finally, defendant contends that the claims must be dismissed because enforcement of the Management Agreement is barred by the statute of frauds.

Notwithstanding defendant's detailed arguments that plaintiff's claims based on the Shopping/Finders Agreement must be dismissed, the gravamen of the complaint is that defendant breached the oral Management Agreement. *See* Plaintiff's Opposition to Defendant's Motion at 19; Complaint ¶ 10. Accordingly, this Court will not address the defendant's contentions with respect to the Shopping/Finders Agreement. The remaining issues are whether the enforcement of the Management Agreement is barred by the statute of frauds and whether the agreement is too indefinite to be enforced. For the reasons set forth below, this Court finds that enforcement is not barred and the agreement is not void for indefiniteness. Accordingly, defendant's motion is denied.

## DISCUSSION

*The California and New York Statutes of Frauds*

■ Defendant contends that New York law applies and that New York's Statute of Frauds bars enforcement of the oral Management Agreement. Plaintiff counters that California law should apply and that under the California Statute of Frauds, the

Management Agreement is enforceable. To resolve the issue, this Court must apply New York's choice of law rules. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (federal courts sitting in diversity must apply the conflict of laws rules prevailing in the states in which they sit). Under New York's choice of law rules, the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws invoked by the parties. *Booking v. General Star Management Co.*, 254 F.3d 414, 419–420 (2d Cir.2001) (*citing Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223, 613 N.E.2d 936, 597 N.Y.S.2d 904 (N.Y.1993)).

The relevant New York and California provisions are nearly facially identical. New York's Statute of Frauds provides:

> [e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: 1. By its terms is not to be performed within one year from the making thereof
> . . .

N.Y.Gen.Oblig.Law § 5–701(a)(1). Similarly, California's statute provides:

> [t]he following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: (1) An agreement that by its terms is not to be performed within a year from the making thereof.

Cal.Civ.Code § 1624(a)(1). However, as set forth more fully below, the statutes have been interpreted differently. California's statute has been interpreted literally and narrowly. *Rosenthal v. Fonda*, 862 F.2d 1398, 1401 (9th Cir.1988). Court's

have held that employment contracts that are terminable at the will of either party fall outside the bar. *Id.* In contrast, the New York Statute of Frauds has been interpreted to bar enforcement of an employment contract requiring commission payments unless after the plaintiff has performed, "the defendant can unilaterally terminate the contract, discharging all promises made to the plaintiff including the promise to make commission payments." *Id.*

*California Law*

▇▇▇ An oral contract is unenforceable under California law only if it expressly precludes performance within one year or by its terms cannot possibly be performed within one year. *White Lighting Co. v. Wolfson,* 68 Cal.2d 336, 343, 438 P.2d 345, 66 Cal.Rptr. 697 (Cal.1968); *see also Plumlee v. Poag,* 150 Cal.App.3d 541, 548, 198 Cal.Rptr. 66 (Cal.Ct.App.1984); *Robards v. Gaylord Bros., Inc.,* 854 F.2d 1152 (9th Cir.1988); *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1290–91 (9th Cir.1987). This has been interpreted to exempt contracts that are terminable within one year by either party from the Statute of Frauds. As set forth in *Plumlee:*

> [a]lthough the majority of jurisdictions have held that a party's option to put an end to a contract within a year does not take it out of the operation of the statute

of frauds, on the grounds that to be discharged from liability under a contract is not to 'perform' it, the California rule is to the contrary: A contract ... may be taken out of [the statute of frauds's] operation by the fact that a party (or at least a defendant) may rightfully terminate it within a year.

150 Cal.App.3d at 550, 198 Cal.Rptr. 66 (footnote omitted).[2] Because contracts that may be terminated at will by either party can, by their terms, be "performed" within one year, they are enforceable. *White Lighting,* 68 Cal.2d at 344, 66 Cal. Rptr. 697, 438 P.2d 345; *Russell v. International Alliance of Theatrical Stage Employes and Moving Picture Mach. Operators of U.S. and Canada,* 66 Cal.App.2d 691, 699, 152 P.2d 737 (Cal.Dist.Ct.App. 1944); *see also Jenkins v. Family Health Program,* 214 Cal.App.3d 440, 445–46, 262 Cal.Rptr. 798 (Cal.Dist.Ct.App.1989) (if plaintiff employee can terminate at will and defendant employer can terminate for cause, the contract is enforceable); *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 672–75, 765 P.2d 373, 254 Cal.Rptr. 211 (Cal.1988); *Steward v. Mercy Hospital,* 188 Cal.App.3d 1290, 1295–96, 233 Cal. Rptr. 881 (Cal.Dist.Ct.App.1987). Moreover, employment contracts providing for payment upon termination of the employment relationship or payment of a bonus ascertainable only after one year are not barred. *White Lighting,* 68 Cal.2d at 344,

---

2. The contract at issue in *Plumlee* provided that plaintiff would be employed until at least ten years after the death of the employer "so long as plaintiff reduced the then existing annual shrinkage of [the employer's] linen supplies from a national average ranging from 17 percent to 25 percent annually to a lower level and continued to maintain a lower level." *Plumlee,* 150 Cal.App.3d at 548, 198 Cal.Rptr. 66 (quotations omitted). The court interpreted the "shrinkage reduction" clause to give the employer, and "perhaps even Plumlee," the right to terminate the contract in the event that Plumlee did not perform as required. The court further found that the employer had the right to terminate the contract as of the end of the year or earlier. Ultimately, the court held that termination for noncompliance with the "shrinkage reduction" condition would not merely have excused nonperformance but, instead, would constitute performance of the contract within one year under California law.

66 Cal.Rptr. 697, 438 P.2d 345.[3]

Thus, under California law, the oral Management Agreement, as alleged, is not barred by the Statute of Frauds. *Rosenthal v. Fonda*, 862 F.2d 1398 (9th Cir. 1988), supports this conclusion in dicta. In *Rosenthal*, plaintiff alleged that defendant actress Jane Fonda entered into an oral contract with him for a variety of services in exchange for a percentage of income derived from projects initiated during his tenure. Although the court ultimately applied New York law, it concluded that because the oral contract was terminable at the will of either party, the contract would fall outside California's Statute of Frauds as a contract capable of being performed within one year. *Rosenthal*, 862 F.2d at 1401.

*New York*

▮▮▮ New York courts have interpreted the Statute of Frauds somewhat differently. The key issue in determining the applicability of New York's Statute of Frauds is whether the defendant can unilaterally terminate the contract, discharging all promises made. *Shirley Polykoff Advertising, Inc. v. Houbigant, Inc.*, 43 N.Y.2d 921, 922, 374 N.E.2d 625, 403 N.Y.S.2d 732 (N.Y.1978); *North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 176–77, 239 N.E.2d 189, 292 N.Y.S.2d 86 (N.Y.1968); *Rosenthal v. Fonda*, 862 F.2d 1398, 1401 (9th Cir.1988). Contracts involving performance which is dependent on the will of a third party, and not solely upon the will of the parties to the contract, fall within the Statute of Frauds. *McCollester v. Chisholm*, 104 A.D.2d 361, 478 N.Y.S.2d 691 (N.Y.App. Div.1984), *aff'd*, 65 N.Y.2d 891, 482 N.E.2d 1226, 493 N.Y.S.2d 310 (N.Y.1985). Commission sales arrangements that extend beyond an employee's termination, therefore, are barred. *See, e.g, Zupan v. Blumberg*, 2 N.Y.2d 547, 141 N.E.2d 819, 161 N.Y.S.2d 428 (N.Y.1957) (agreement for 25% commission on any account brought so long as account was active barred); *Urvant v. Imco Poultry, Inc.*, 325 F.Supp. 677 (E.D.N.Y.1970), *aff'd*, 440 F.2d 1355 (2d Cir.1971) (summarizing New York case law addressing continuing commission arrangements).

As alleged by plaintiff, defendant does not have a unilateral right to terminate the Management Agreement. Defendant is obligated to turn over fifteen percent of his gross earnings "for all entertainment-related employment, engagements or agreements commenced or entered into while [plaintiff] served as manager of the [Gravediggaz]." *See* Ehrlich Aff. ¶ 23. The earnings in which plaintiff has an interest may continue indefinitely, as recordings

---

**3.** Relying on *Tostevin v. Douglas*, 160 Cal. App.2d 321, 325 P.2d 130 (Cal.Dist.Ct.App. 1958), defendant contends that under California law the oral Management Agreement would be barred. *Tostevin* involved a contract for services in connection with the production of a television series. Plaintiff claimed he was to continue to receive payment so long as the program was broadcast throughout the world. The court reasoned that because the parties "must have contemplated that the continued performance of the contract was to last more than one year ... as indeed it did," the agreement was invalid. *Id.* at 327–28, 325 P.2d 130. However, the contract in *Tostevin*, unlike the contract at issue, was terminable only by mutual agreement. Moreover, *Newfield v. Insurance Co. of the West*, 156 Cal.App.3d 440, 203 Cal.Rptr. 9 (Cal.Dist.Ct.App.1984), a case relying on *Tostevin* and holding that an employment contract terminable by the employer for good cause implied that a period of more than a year was contemplated by the parties and was barred, has been criticized as irreconcilable with the rule of *White Lighting* and has not been followed. *See Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 672–675 & n. 18, 765 P.2d 373, 254 Cal.Rptr. 211 (Cal.1988) (noting, in addition, that a retrospective approach inferring original intent of the parties from the ultimate duration is erroneous).

and other musical works sold to third parties will generate earnings far into the future. Thus, defendant has an ongoing obligation to pay plaintiff that he cannot terminate. This open-ended interest is squarely within the Statute of Frauds under New York law. *See, e.g., Grossberg v. Double H. Licensing Corp.,* 86 A.D.2d 565, 446 N.Y.S.2d 296 (1982) (agreement to produce a record in exchange for a royalty on all records sold barred; "defendants' liability endured so long as a single record ... was sold anywhere in the world"); *Kantor v. Watson,* 167 A.D.2d 297, 298, 562 N.Y.S.2d 39 (N.Y.App.Div.1990) (agreement to develop, produce and market screenplay based on defendant's childhood barred; "payments to plaintiff contemplated under the alleged agreement clearly could not be accomplished within one year, as plaintiff was to share any compensation received from exploitation of defendant's screenplay").[4]

*Choice of Law*

 Because there is a conflict between the Statutes of Frauds of California and New York, this Court must apply New York choice of law rules that govern contract disputes to determine which state's law to apply. *See Booking v. General Star Management Co.,* 254 F.3d 414, 420 (2d Cir.2001). Under New York choice of law rules, the "center of gravity" or "grouping of contacts" approach, under which the spectrum of significant contacts is considered in determining the law to be applied, is generally used in contracts cases. *Matter of Allstate Ins. Co. (Stolarz),* 81 N.Y.2d 219, 226, 613 N.E.2d 936, 597 N.Y.S.2d 904 (N.Y.1993). The significant contacts to be considered in a contracts case are: the place of contracting, negotiation, and performance; the location of the subject matter of the contract; and the domicile of the contracting parties. *Id.,* 81 N.Y.2d at 227, 597 N.Y.S.2d 904, 613 N.E.2d 936. However, if the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests, the policies are considered as in the "interest analysis" generally applied to tort cases. *Id.,* 81 N.Y.2d at 225–26, 597 N.Y.S.2d 904, 613 N.E.2d 936. Under the "interest analysis," "the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the particular law in conflict." *Warshay v. Guinness PLC,* 750 F.Supp. 628, 632 (S.D.N.Y.1990), *aff'd,* 935 F.2d 1278 (2d Cir.1991) (quoting *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 382, 248 N.E.2d 576, 300 N.Y.S.2d 817 (N.Y.1969)) (internal quotations omitted); *see also, Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531 & n. 5 (2d Cir.1997) (explaining New York choice of law rule in breach of contract cases).

In "finder's fee" contract cases involving statute of frauds issues, New York courts have applied the "interest analysis." *Matter of Allstate Ins. Co. (Stolarz),* 81 N.Y.2d at 226, 597 N.Y.S.2d 904, 613 N.E.2d 936 (citing *Intercontinental Planning, Ltd.,* 24 N.Y.2d at 382–385, 300 N.Y.S.2d 817, 248 N.E.2d 576 (court took into account the underlying policy to contribute to New York's economic development, a strong

---

4. *Cron v. Hargro Fabrics, Inc.,* 91 N.Y.2d 362, 694 N.E.2d 56, 670 N.Y.S.2d 973 (N.Y.1998), enforcing an alleged oral agreement to pay a bonus consisting of a percentage of a company's annual pretax profits, calculable after the close of the year, does not alter treatment of continuing commission arrangements like the one at issue. The ruling represents only a "slight modification of the language in previous case law concerning the necessity of full payment by all parties within a year to satisfy the Statute of Frauds." *Id.* at 370, 670 N.Y.S.2d 973, 694 N.E.2d 56.

state interest, in applying the New York Statute of Frauds requiring a written agreement to a finder's fee dispute instead of New Jersey law not requiring a written agreement)); *Warshay*, 750 F.Supp. at 632 (also citing *Intercontinental Planning, Ltd.*) (action for breach of an oral "finder's fee" agreement). However, in cases involving other provisions of New York's Statute of Frauds, courts have not found a strong underlying public policy interest. *See Spink & Son, Ltd. v. General Atlantic Corp.*, 167 Misc.2d 120, 637 N.Y.S.2d 921 (N.Y.Sup.Ct.1996); *Finnish Fur Sales Co., Ltd. v. Juliette Shulof Furs, Inc.*, 770 F.Supp. 139 (S.D.N.Y.1991).

Defendant urges the application of New York law because plaintiff is admitted to the New York Bar and defendant resides in New York. Also, the earnings which are at issue stem from plaintiff's contract with Gee Street, a New York company. Far more significant facts support the application of California law. Specifically, plaintiff resides in California and negotiated and entered the terms of the oral Management Agreement in California. Any actions taken by plaintiff in performing this agreement were in California, his sole place of business. *See* Ehrlich Aff. ¶¶ 5, 16–17, 25. These facts outweigh defendant's residence in New York, as well as plaintiff's New York Bar membership. Moreover, the Court is not persuaded that the location of the record company with which defendant signed a contract is significant for choice of law purposes. The determinative contract as to defendant's liability is the oral Management Agreement between plaintiff and the Gravediggaz. Taken as a whole, California's contacts with the subject matter of this litigation make the application of its laws appropriate.

*Definiteness of the Contract*

■ Having found that California law is applicable and that this contract, there-

fore, is not barred by the Statute of Frauds, the Court must address defendant's claim that the oral Management Agreement is void for indefiniteness. As alleged by plaintiff,

> [i]t was explicitly agreed between myself and the Gravediggaz that I would receive, as compensation, a commission equal to fifteen percent (15%) of the gross earnings of the Gravediggaz, and each of their members, for all entertainment-related employment, engagements or agreements commenced or entered into while I served as manager of the group. Additionally, it was agreed that either the Gravediggaz or I could terminate the Management Agreement at any time.

Ehrlich Aff. ¶ 23. In *Mandel v. Liebman*, 303 N.Y. 88, 100 N.E.2d 149 (N.Y.1951), the New York Court of Appeals found a contract with similar terms that was challenged as unconscionable to be enforceable on the grounds that plaintiff was required to render the particular services for which he was employed under its terms. The court noted:

> [e]ven if the contract had merely provided that plaintiff was employed as "personal representative and manager," with no further description of his duties, that would have been sufficient, for it would have shown that as to these parties, in a specialized field with its own peculiar customs and usages, that phrase was enough to measure the entire intent of plaintiff's required services.

*Id.* at 94, 100 N.E.2d 149. In *Meyers v. Nolan*, 18 Cal.App.2d 319, 63 P.2d 1216 (Cal.Dist.Ct.App.1936), cited in *Mandel*, the California District Court of Appeals refused to void a contract with similar terms for uncertainty. It found:

> it is a matter of common knowledge that many actors employ managers and per-

sonal representatives and the services expected of such managers are fairly well established by the practices of the industry. *Id.* at 321–22, 63 P.2d 1216. Accordingly, it concluded that both parties understood the meaning of the contract and that it could be enforced. In light of these cases allowing the terms "personal representative" and "manager," standing alone, to create enforceable rights and duties, this Court will not void the oral Management Agreement for indefiniteness.

*Conclusion*

For the reasons set forth above, the Court concludes that California law applies to this contract dispute and that the oral Management Agreement is not barred by the California Statute of Frauds.[5] Further, the Court concludes that the oral contract as alleged is sufficiently definite to be enforced. Accordingly, defendant's motion to dismiss and, in the alternative, for summary judgement is denied. Because plaintiff's claimed need for an accounting is largely based on his lack of knowledge of the compensation received by defendant for his individual work, and plaintiff's entitlement to a percentage of such compensation cannot be resolved at this stage of the litigation, the Court declines to address defendant's motion to dismiss the claim for an accounting at this time. In addition, the Court denies defendant's motion to dismiss plaintiff's fifth claim seeking damages as a result of defendant's late or canceled appearances.

SO ORDERED.

5. Accordingly, the Court will not address plaintiff's cross-motion to amend the complaint to include a request for recovery on a quasi-contract basis. Plaintiff conditions the request upon the Court's finding the oral Management Agreement barred by the statute of frauds.