**Lewis EISENBERG, Plaintiff-Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Cigna Corporation, Defendants-Appellees.**

No. 86–6128.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1987.

Decided April 28, 1987.

Michael S. Duberchin, North Hollywood, Cal., for plaintiff-appellant.

James S. Bryan, Los Angeles, Cal., for defendants-appellees.

Before REINHARDT and WRIGHT, Circuit Judges, and MUECKE,* District Judge.

MUECKE, Senior District Judge:

## OVERVIEW

In this diversity case, the Appellant, Lewis Eisenberg, has asserted three claims against his former employer, the Insurance Company of North America ("ICNA"). Specifically, the Appellant has charged that by terminating his employment, ICNA has 1) breached an oral employment contract; 2) breached the implied covenant of good faith and fair dealing; and 3) tortiously inflicted emotional distress. On December 26, 1985, ICNA moved for summary judgment. The District Court granted the Motion on June 24, 1986. The Court's Order reasoned that the Appellant failed to sufficiently demonstrate the existence of a genuine factual dispute as to the cause of his termination, 638 F.Supp. 746. On July 2, 1986, the Appellant filed a timely Notice of Appeal.

## FACTS AND PROCEEDINGS BELOW

On January 29, 1979, the Appellant accepted an offer of employment as a claims supervisor from ICNA. Due to alleged economic considerations, in May of 1983 ICNA eliminated two positions at the facility where the Appellant was employed. On May 25, 1983, the Appellant was notified that his position was one of the two subject to elimination. Pursuant to an ICNA poli-

* Honorable Carl A. Muecke, Senior United States District Judge, District of Arizona, sitting by designation.

cy, the Appellant was also informed that he would remain on the company's payroll until June 23, 1983 and that his formal termination would be effective as of August 18, 1983. The Appellant was further advised that, between May 25, 1983 and July 20, 1983, attempts would be made to relocate him within the company. Such attempts were unavailing, and on August 18, 1983 the Appellant was formally terminated.

The Appellant filed his complaint in the Los Angeles County Superior Court on August 13, 1984. His complaint's argument was four pronged. It alleged that his termination constituted 1) a breach of contract; 2) a breach of the implied covenant of good faith and fair dealing; 3) fraud; and 4) intentional infliction of emotional distress. On November 26, 1984, the case was removed to the United States District Court for the Central District of California based upon the existence of complete diversity of citizenship between the Appellant and ICNA.

■ ICNA filed a Motion for Summary Judgment on December 26, 1985. The Motion argued that the Appellant's first and second claims were barred by the statute of frauds, the second and fourth claims were barred by a one year statute of limitations and the third claim for fraud was without merit. In his Response to the Motion, the Appellant abandoned his fraud claim. The Appellant's Response also stated that the basis for his breach of the covenant of good faith and fair dealing claim was an employment discharge in violation of public policy.[1]

Specifically, the Appellant argued that he had been terminated for his refusal to violate California law. This refusal consisted of the Appellant's unwillingness to violate

guidelines of the California Department of Insurance at his company's behest. In support of this contention, the Appellant adduced his own declaration and two ICNA interoffice memoranda. The district court found that the Appellant's Response to ICNA's Motion was merely conclusionary and lacked adequate specificity as to "the nature and significance of the alleged 'violation' or its connection with the course of [the Appellant's] employment...." Based on this reasoning, the district court rejected the Appellant's entire case.

## DISCUSSION

### I. DID THE DISTRICT COURT ERR IN GRANTING SUMMARY JUDGMENT?

A de novo standard of review is applied to a district court's grant of summary judgment. *Ralph C. Wilson Industries, Inc. v. Chronicle Broadcasting Co.,* 794 F.2d 1359, 1362 (9th Cir.1986). Thus, this Court applies the same summary judgment standard as the district court. The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *Anderson v. Liberty Lobby, Inc.,* ── U.S. ──, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Hence, the question is whether "reasonable minds could differ as to the import of the evidence ..." *Id.* 106 S.Ct. at 2511. "If the evidence is merely colorable ... or is not significantly probative, summary judgment may be granted." *Id.*

■ In making the determination of whether summary judgment should be granted, the court must also consider applicable burdens of proof. If the plaintiff is unable to sufficiently adduce evidence that could lead a reasonable jury to conclude

---

1. The Appellant specifically articulated the termination in contravention to public policy argument for the first time in his Response to ICNA's Motion for Summary Judgment. This argument was not mentioned in the complaint or the pretrial order. Therefore, ICNA now contends that this argument actually constitutes a separate cause of action outside the scope of this proceeding, and that the Appellant should have to move to amend his complaint if he wishes to pursue it. ICNA's contention is without merit. The district court explicitly based its ruling on the substance of the termination in violation of public policy argument. Consequently, a motion to amend is unnecessary. Moreover, termination in violation of public policy claims are a species of breach of the covenant of good faith and fair dealing. *Crossen v. Foremost-Mckesson, Inc.,* 537 F.Supp. 1076, 1078 (N.D.Cal.1982). The Appellant clearly pleaded this claim. Thus, there is no "separate cause of action" and no need to amend the complaint.

that the plaintiff has satisfied his burden of proof, his claim is subject to an unfavorable summary disposition. *Id.* at 2512. Of course, however, the non-moving party's evidence is to be taken as true and all inferences are to be drawn in the light most favorable to the non-moving party. *Id.* at 2513. Moreover, if the non-moving party adduces direct evidence of a genuine issue of fact, such evidence is not to be weighed against the moving party's conflicting evidence, but rather is to be submitted to the trier of fact for resolution. *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n.*, 809 F.2d 626, 630–31 (9th Cir.1987).

In the present case, the district court granted ICNA's Motion for Summary Judgment because the Appellant failed to proffer sufficient evidence that he had been terminated in contravention of public policy and his Response to ICNA's Motion was conclusionary. As to the question of the sufficiency of evidence, the Appellant tendered three documents in support of his claims. In his declaration, the Appellant stated that he was terminated because of his refusal to cooperate in the violation of California Department of Insurance guidelines.[2] Furthermore, the Appellant also submitted two of the company's interoffice memoranda to buttress his position. In the first memorandum, one of the Appellant's superiors advises another that a client is finding the Appellant uncooperative and troublesome. In the second memo, a superior informs yet another superior of the complaint and suggests that if something is not done about the Appellant soon, a major account will be lost.

■ Viewing the evidence in the light most favorable to the Appellant, we find that the district court's grant of summary judgment was unwarranted. In the context of a summary adjudication, "[t]he evi-

dence of the non-movant is to be believed." *Anderson*, 106 S.Ct. at 2513. Therefore, the Appellant's declaration is to be accepted as true. Moreover, if inferences are to be drawn in favor of the Appellant, the interoffice memoranda must be construed as discussing the Appellant's unwillingness to cooperate in the violation of Department of Insurance guidelines.[3] Taken together, these three factors could lead a reasonable jury to find in favor of the Appellant. Furthermore, since these three factors constitute direct evidence of a material factual dispute, the Appellant's evidence should not be weighed against the evidence of ICNA. *T.W. Electrical* at 631–32.

■ The district court also found the Appellant's Response merely "conclusionary." However, we find that the Appellant articulated his claim with sufficient specificity. The Appellant declared that he refused to cooperate with a client's violation of Department of Insurance guidelines. He persisted with this refusal despite his employer's instructions to cooperate. After several superiors discussed the Appellant's uncooperativeness, his employment was terminated. The Appellant's argument is not unpremised. Therefore, the Appellant's Response is not merely conclusionary.

■ Finally, the district court concluded that the Appellant failed to adequately specify the "nature and significance" of the alleged public policy violation. The Appellant, however, specifically stated that the violation consisted of his discharge in retaliation for his complaints concerning the size of claim manager caseloads. Hence, the "nature" of the violation is clear. As to the "significance" of the violation, we find that termination in retaliation for failure to violate an Insurance Department guideline is contrary to public policy. It is clear that the caseload guidelines of

**2.** Specifically, the Appellant argues that he was terminated in retaliation for his complaints concerning ICNA's claim to claim employee ratio. He contends that while California Department of Insurance guidelines set a maximum caseload of 250 claims, ICNA employees were required to manage as many as 800 cases.

**3.** The memoranda do not specifically address the Appellant's unwillingness to violate the guidelines. However, since for obvious reasons such concerns aren't ordinarily explicitly articulated, a reasonable jury could conclude that such unwillingness was the subject of the complaint.

the Department represent a public policy to insure that each insurance claim receives adequate consideration. Such a policy is obviously thwarted when a claims manager is overwhelmed with claims.[4] Thus, the Appellant's discharge in violation of public policy argument was legally sufficient.

 Moreover, even if the Appellant had failed to demonstrate his caseload complaints were protected by public policy, it would not mean that the district court had sufficient basis to reject all the Appellant's claims. Public policy aside, an employer's right to terminate an employee is not unqualified. The right is tempered by the explicit and implicit terms of the employment agreement. *Pugh v. See's Candies*, 116 Cal.App.3d 311, 171 Cal.Rptr. 917, 922 (1 Dist.1981). Parties may provide, expressly or impliedly, that the employee may only be discharged for "good cause." In determining whether an agreement permits the employee's termination only for good cause, a court may consider the employer's personnel policies and the employer's communications reflecting assurances of continued employment. *Id.*, 171 Cal.Rptr. at 925.

 In the present case, the Appellant adduced direct evidence that ICNA's policies and communications permitted discharge only for good cause. In fact, the district court specifically assumed that the Appellant could only be terminated for good cause. However, termination in retaliation for refusing to cooperate in the violation of Insurance Department guidelines would not constitute discharge for good cause. Indeed, ICNA does not even challenge this position. Nor does ICNA attempt to provide an alternative explanation of the memoranda. ICNA merely asserts that it had good cause to terminate the Appellant's employment—namely, considerations of economy. The Appellant, however, has adduced his declaration and the memoranda as direct evidence to contradict this assertion. Since this evidence must be taken as true, *T.W. Electrical* at 630–31,

the Appellant's breach of contract claim is not vulnerable to summary disposition.

## II. THE STATUTE OF FRAUDS DEFENSE

Section 1624, Subdivision 1 of the California Civil Code provides that: "An agreement that by its terms is not to be performed within a year from the making thereof" is "invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent." In the present case, ICNA argues that since the Appellant failed to memorialize his employment contract with ICNA and such contract was to be performed outside a year's time, the Appellant's Claim for breach of contract is barred by the statute of frauds.

ICNA adduces *Newfield v. Insurance Company of the West*, 156 Cal.App.3d 440, 203 Cal.Rptr. 9 (2 Dist.1984), in support of its position. In *Newfield*, the court considered an oral employment contract and reasoned that since the plaintiff charged that he did not receive *permanent* employment the contract was to be performed for a period longer than a year and hence was barred by the statute of frauds. In response to ICNA's statute of frauds defense, the Appellant argues that *Newfield* is inapposite because his contract was not for permanent employment, but rather was to extend for an indefinite period subject to termination for good cause. Since he could have been terminated within one year, although he hoped and expected he would not be, the statute of frauds does not bar his claim.

The Appellant directs the Court's attention to *Gray v. Superior Court (Cipher Data)*, 181 Cal.App.3d 813, 226 Cal.Rptr. 570, 574 (4 Dist.1986). Considering a breach of an oral employment agreement and a statute of frauds defense, the *Gray* court held that since the contract could have theoretically been performed within a year, the statute of frauds defense would not prevail. In reaching this conclusion,

---

4. For good discussion of termination in violation of public policy claims, *see Hentzel v. Singer Co.*, 138 Cal.App.3d 290, 188 Cal.Rptr. 159 (1 Dist.1982) (holding that termination in retaliation for efforts to obtain a reasonably smoke-free work environment violated public policy).

the court noted that the rule of *Newfield* was pending review before the California Supreme Court.[5] Moreover, the court also observed that an earlier but unoverruled California Supreme Court decision was contrary to *Newfield*. *See White Lighting Co. v. Wolfson,* 68 Cal.2d 336, 66 Cal.Rptr. 697, 701, 438 P.2d 345, 349 (1968). In *White Lighting,* the court stated that "[t]he cases hold that section 1624, subdivision 1, applies only to those contracts which, by their very terms, cannot possibly be performed within one year." [6]

We find that the rule of *Newfield* is not representative of California law and accordingly hold that if an oral agreement is capable of being performed within a year, it is not within the confines of the statute of frauds.

## III. THE STATUTE OF LIMITATIONS DEFENSE

ICNA argues that the Appellant's claims for breach of the covenant of good faith and fair dealing and intentional infliction of emotional distress are barred by Section 340(3) of the California Code of Civil Procedure. Once again, ICNA relies on *Newfield* to support this position. In dicta, the *Newfield* court stated that Section 340(3)'s one year limitation period governed any tort action. *Newfield, supra* at 631.[7] This view was followed by the court in *Miller v.*

*Indasco, Inc.,* 186 Cal.App.3d 1336, 223 Cal.Rptr. 551, 552 (2 Dist.1986) (citing *Newfield,* the court ruled that a cause of action for wrongful discharge in violation of public policy sounds in tort and is thus governed by the one year statute of limitations). Section 340(3) does govern the tort of intentional infliction of emotional distress. *See Milla v. Tamayo,* 187 Cal. App.3d 1453, 232 Cal.Rptr. 685, 689 (2 Dist. 1986). However, in contrast to *Newfield* and *Miller,* other California courts have applied the two year period of Section 339(1) of the California Code of Civil Procedure to claims analogous to breach of the covenant of good faith and fair dealing.[8]

Since California law is unclear as to which limitations period governs breach of the covenant of good faith and fair dealing claims, this Court must attempt to ascertain which rule the California Supreme Court is most likely to embrace. *Daniels v. Fesco Division of Cities Service Co.,* 733 F.2d 622, 623 (9th Cir.1984). In considering the date of accrual of a wrongful discharge claim, the *Daniels* court stated that it "believe[d] the [California] court, based on its traditional reliance on federal employment law, would apply a two-year statute of limitations to a wrongful discharge action." *Id.* at 623.

Moreover, based on a very thorough analysis of the underlying purposes

5. In *Santa Monica Hospital v. Superior Court,* 182 Cal.App.3d 878, 218 Cal.Rptr. 543 (2 Dist. 1985), the court applied the *Newfield* rule. The California Supreme Court granted review on January 16, 1986. As of March 26, 1987, the court had not considered the appeal or even scheduled oral argument.

6. *See also, Plumlee v. Poag,* 150 Cal.App.3d 541, 198 Cal.Rptr. 66, 71 (2 Dist.1984) ("It is well-established in California that an oral contract is invalid under subdivision one only were by its *very terms* it cannot be performed within a year from the date it is made. The words of subdivision one have been interpreted literally and narrowly by our courts. Only those contracts which expressly preclude performance within one year are unenforceable.") (Citations omitted. Emphasis in original.), *Stewart v. Mercy Hospital,* 188 Cal.App.3d 1290, 233 Cal.Rptr. 881 (5 Dist.1987) (in ruling that an oral employment agreement with no specific termination date was capable of being performed within one year and was therefore not barred by the statute of

frauds, the court stated "... upon the weight of authority, *Newfield* constitutes a minority view.")

7. This proposition is not embraced by the majority of California courts. *See* note 9 *supra,* 3 B. Witkin, *California Procedure (Actions),* section 468.

8. *See Edwards v. Fresno Community Hospital,* 38 Cal.App.3d 702, 113 Cal Rptr. 579 (5 Dist. 1974) (Section 339(1) applied to curtailment of physicians hospital admitting privileges); *Trembath v. Digardi,* 43 Cal.App.3d 834, 118 Cal.Rptr. 124 (1 Dist.1974) (339(1) governs interference with attorney's retainer agreement); *Tu Vu Drive-In Corp. v. Davies,* 66 Cal.2d 435, 58 Cal. Rptr. 105, 426 P.2d 505 (1967) (339(1) applied to injury to drive-in owners business operations); *McFadden v. H.S. Crocker Co.,* 219 Cal.App.2d 585, 33 Cal.Rptr. 389 (2 Dist.1963) (339(1) applied to interference with plaintiff's greeting card trade).

**1292**

of the two statutes, persuasive California authority supports the *Daniels* decision. Section 340(3) was enacted to provide a one-year statute for ordinary "intentional or negligent wrongs which result to injuries to the person or reputation." 3 B. Witkin, *California Procedure (Actions)*, section 468. Section 339(1)'s scope, however, is more expansive. It was enacted as "a catch-all for unusual tort actions not otherwise provided for." *Id.* Breach of the covenant of good faith and fair dealing has been characterized as a judicially created "hybrid" which sounds in tort or contract depending upon the facts of the case. *Frazier v. Metropolitan Life Insurance Co.*, 169 Cal.App.3d 90, 214 Cal.Rptr. 883, 888 (2 Dist.1985). Hence, it is certainly an "unusual" tort action. Accordingly, we believe that the California courts would apply Section 339(1)'s two year period to a breach of the covenant of good faith and fair dealing claim.

■■■ The Appellant filed his claim on August 13, 1984. He was notified that he was to be discharged on May 25, 1983. An "employer's liability for wrongful discharge commences upon notice of the employee's termination even though the employee continues to serve the employer after receipt of such notice." *Daniels, supra* at 623. Thus, applying the two year limitation period, the Appellant's breach of the covenant of good faith and fair dealing claim was timely filed.

■■■ The Appellant's claim for intentional infliction of emotional distress, as a matter of law, is also not time barred. The Appellant claims that his wrongful discharge constituted an intentional infliction of emotional distress. He was notified that he would be discharged on May 25, 1983. At that time, he was also advised that ICNA would make attempts to relocate him in another position within the company between May 25, 1983 and July 20, 1983, and that he would be formally terminated on August 18, 1983. A cause of action for the intentional infliction of emotional harm arises when the harm is inflicted. *See Murphy v. Allstate Insurance Co.*, 83 Cal. App.3d 38, 147 Cal.Rptr. 565, 575 (4 Dist.

1978). Such harm must be "severe." *Id.* The Appellant conceivably could have experienced the severe harm when he was notified of his impending termination, when the deadline for relocating him within the company expired or when he was actually terminated. The question of when a continuing harm grew severe enough to constitute intentional infliction of emotional distress is one of fact. *Id.* In this case the alleged harm could have become acutely severe on August 18, 1983, less than one year before the Appellant filed his complaint. Thus, we are unable to conclude that as a matter of law the Appellant's claim for intentional infliction of emotional distress is time barred. . . .

### CONCLUSION

The order of the district court is REVERSED and REMANDED for proceedings consistent with this opinion.