Kenneth E. SOUZA, Jessie M. Souza, and Waikoloa Concrete and Aggregate, Inc., a Hawaii corporation, Plaintiffs,

v.

COUNTY OF HAWAII; County of Hawaii Planning Commission; County of Hawaii Planning Department; and Albert Lono Lyman, Individually, and in his official capacity as Planning Director of the County of Hawaii Planning Department, Defendants.

Civ. No. 88–00038.

United States District Court,
D. Hawaii.

Sept. 6, 1988.

---

Reinwald O'Connor Marrack Hoskins & Playdon, George W. Playdon, Honolulu, Hawaii, for plaintiffs.

John Wagner, Steven Christensen, Anson Lee, County of Hawaii, Hilo, Hawaii, for defendants.

## ORDER

## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EZRA, District Judge.

### I. BACKGROUND.

*A. Parties.*

Plaintiff Waikoloa Concrete and Aggregate, Inc. (Waikoloa Concrete) operated a cement batching operation on the Island of Hawaii. Plaintiffs Kenneth E. Souza and Jessie Souza were owners and employees of Waikoloa Concrete.

Defendant County of Hawaii ("County") is a municipal corporation. Defendants County of Hawaii Planning Commission ("Planning Commission") and County of Hawaii Planning Department ("Planning Department") are administrative agencies of defendant County. Defendant Planning Director Albert Lono Lyman ("Lyman"), is the head of defendant Planning Department. State Land Use Commission (LUC) is a Hawaii state agency.

### B. *Facts.*

In 1971, Boise Cascade Recreation Communities Group applied for a special permit to operate a quarry at Waikoloa, Hawaii. On October 14, 1971, the County Planning Commission tentatively established five conditions for the special permit, the fifth of which is germane to the matter before the court. The fifth condition provided: "The materials removed from the subject site shall be restricted to use within their own development." This would prevent the holder of the special permit from selling quarried materials off site.

On November 11, 1971, the County Planning Commission reconsidered the special permit application and eliminated the fifth condition. The State Land Use Commission (LUC) staff then drafted a report for the State's final approval of the permit. The State LUC staff report recommended including the fifth condition originally drafted into the permit by the County Planning Commission (10/14/71), but later deleted by the County Planning Commission (11/11/71).

On December 17, 1971, the State LUC approved the permit. The State LUC, however, approved the permit without the fifth condition, disregarding the recommendation of the State LUC staff report concerning the fifth condition. The permit as finally approved would have allowed its holder to market the quarried material off site.

The State LUC's final decision deleting the fifth condition was contained in the minutes of the State LUC's December 17, 1971 meeting. The State LUC did not provide the County with a copy of these minutes. The State LUC sent the County a letter, dated December 20, 1971, providing in pertinent part that the permit was approved, "subject to the conditions, as amended, imposed by the Hawaii Planning Commission." The approval letter also stated: "A copy of the staff report is enclosed for your information." The attached State LUC staff report recommended: "With regard to condition #5 which was reconsidered and deleted by the Hawaii County Planning Commission at its meeting of November 11, 1971, the Land Use Commission staff feels that the restriction is justified and reasonable, and should be imposed...." Staff Report, at 6.

Boise Cascade's special permit ran from December 17, 1971 to December 17, 1976. The permit was given a series of five year extensions, apparently operative through 1991. Some time before 1981, Boise Cascade transferred its development holdings in Waikoloa and the special permit to Transcontinental Development Company ("TDC").

In 1985, plaintiffs Souzas started a business, Waikoloa Concrete, to prepare and sell batch concrete in West Hawaii on the Isalnd of Hawaii. In August, 1985, Waikoloa Concrete made arrangements with TDC for Waikoloa Concrete to operate batching facilities on the special permit site. Waikoloa Concrete obtained a building permit from the Planning Commission to assemble its batching facilities. Waikoloa Concrete then began selling batch concrete on and off site, i.e., in and outside of the Waikoloa development area.

Defendant Lyman as advised by his staff informed TDC that the fifth condition indicated on the original special permit authored by the County Planning Commission was in effect. TDC then informed the plaintiffs that the fifth condition was in effect. Plaintiff Souza contacted defendant Lyman, who also informed Souza that the fifth condition was in effect. In April,

1986, TDC applied through the defendant Planning Department that defendant Planning Commission amend the special permit by removing the fifth condition. The plaintiffs cooperated in this application.

In April 1986, defendant Lyman requested TDC to instruct plaintiff Waikoloa Concrete to end its off site sale of batched material. At a public hearing held on May 28, 1986, defendant Lyman and a staff member of defendant Planning Department told defendant Planning Commission that the fifth condition was in effect and prohibited the plaintiffs' off site sales. TDC thereafter withdrew its application to amend the special permit. Because of the defendants' position concerning the fifth condition, TDC notified the plaintiffs it would end its arrangement with them.

The plaintiffs were issued a cease and desist order by defendant Lyman on July 11, 1986, ordering the plaintiffs to end its off site operations by the middle of August 1986. The plaintiffs applied for an amendment to the special permit deleting the fifth condition. The cease and desist order was suspended on August 5, 1986, pending the decision of the County Commission on whether to delete the fifth condition. On August 28, 1986, defendant Planning Commission denied the plaintiffs' application. On October 16, 1986, defendant Planning Commission denied plaintiffs' request for deferral of the restriction of off site sales. On November 12, 1986, the defendants issued a cease and desist order to Waikoloa Concrete, directing it to end all off site sales of batched material.

The plaintiffs complied with the cease and desist order. The plaintiffs did not appeal the County's action under Haw.Rev. Stat. § 91–14. The plaintiffs liquidated Waikoloa Concrete's assets relating to batching operations and closed their batching business. On December 16, 1986, the plaintiffs learned the fifth condition was never in effect, and the defendants had mistakenly enforced a nonexistent condition.

On January 19, 1988, the plaintiffs filed their section 1983 suit in this court.

Additional facts are presented as required in the discussion below.

## C. Previous Rulings Pertinent to Determination.

On July 11, 1988, the court heard the defendants' motion for summary judgment. *See* Order Denying in Part and Continuing in Part Defendants' Motion for Summary Judgment, July 15, 1988. The court considered the motion as one for summary judgment because materials external to the pleadings were considered by the court. *Rosales v. United States*, 824 F.2d 799, 802 (9th Cir.1987).

The defendants moved for summary judgment on the plaintiffs' 42 U.S.C. § 1983 suit, arguing the plaintiffs failed to raise a cognizable claim under the fifth and fourteenth amendments supporting their suit. The salient issue concerned the animus of defendant Lyman and his staff in mistakenly enforcing a nonexistent condition in a special land use permit. The court ruled the defendants had submitted materials sufficient to meet their initial burden of "identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issue of material fact," *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)), that defendant Lyman and his staff were not more than negligent in enforcing the nonexistent condition.

The court ruled because the defendants met the initial *T.W. Elec.* burden, the plaintiffs could not defeat summary judgment absent significant probative evidence supporting their claim that defendant Lyman and his staff were more than negligent. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The court continued determination of this matter to allow the plaintiffs to conduct discovery and thereafter submit materials to meet their *Commodity Futures* counterburden concerning the animus of defendant Lyman and his staff. The court ruled the plaintiffs must raise a genuine issue of material fact that Lyman and his staff were more than negligent in mistakenly enforcing the nonexistent condition of the permit, citing *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

The court also continued its determinations of the good faith immunity of defendant Lyman, the viability of the plaintiffs' fifth amendment due process claims and fourteenth amendment procedural due process claims, and the dismissal the plaintiffs' pendent state claims.

## D. Disposition of the Motion.

The court heard the defendants' continued motion for summary judgment on August 29, 1988. George Playdon appeared for the plaintiffs. Steven Christensen appeared for the defendants. After carefully considering the record and argument of counsel, the court finds and concludes as follows. The court GRANTS summary judgment to all defendants on the plaintiffs' section 1983 suit. The plaintiffs have not met their *Commodity Futures* counterburden of showing significant probative evidence that the defendants were more than negligent in enforcing the nonexistent condition in the special permit. There is thus no need to address the issue of good faith immunity, which is an affirmative defense. The fifth amendment due process clause cannot support the plaintiffs' section 1983 suit. Nor do the plaintiffs have a viable fourteenth amendment procedural due process claim to support their section 1983 suit. Pendent state claims are dismissed.

## II. DISCUSSION.

### A. Standards for Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

"... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The moving party must be able to show the "absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the opposing party will bear the burden of proof at trial, *see Celotex,* 106 S.Ct. at 2553.

If the moving party meets this burden, the opposing party may not defeat a motion for summary judgment absent significant probative evidence tending to support his claim. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert he will be able to discredit the moving party's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Eisenberg,* 815 F.2d at 1289. *Cf. Liberty Lobby,* 106 S.Ct. at 2513 ("[T]he judge must ask not whether he thinks the evidence favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the opposing party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Inferences from the facts must be drawn in the light most favorable to the opposing party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the opposing party. *Id.*

Finally, the Ninth Circuit has most recently addressed the standards in *California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466 (9th Cir.1987), *cert. denied,* —— U.S. —— & ——, 108 S.Ct. 698 & 699, 98 L.Ed.2d 650 (1988):

In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility for summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and the party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex v. Catrett,* [477] U.S. [317], 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*" *Anderson v. Liberty Lobby,* Inc., [477] U.S. [242], 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible,

that party must come forward with more persuasive evidence than would otherwise be necessary to show there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment. *Franciscan Ceramics,* 818 F.2d at 1468.

Finally, the *Franciscan Ceramics* panel characterized, approvingly, the above cited Supreme Court cases as having "increased the utility for summary judgment." *Id.*

### B. Argument of Defendants.

■ The defendants (i.e., Lyman and his staff) argue the record available to them indicated the fifth condition was part of the permit. They argue they read "as amended" in the December 20, 1971 permit approval letter from the State LUC to mean the State LUC was including the fifth condition per the recommendation of the State LUC staff, which differed from the permit as proposed at the County Commission's November 1971 meeting. *See* Hayashi Deposition, July 25, 1988, at 32–33 (submitted as evidence by plaintiffs). The State LUC's attachment of the State LUC staff report supports this interpretation: the State LUC's "amendment" of the permit would have been the inclusion of the fifth condition, which the County Commission had deleted from the original permit (October 14, 1971) at its November 11, 1971 meeting. The defendants argue they did not request minutes of the State LUC December 17, 1971 meeting because they thought their reading of "as amended" was clarified by the State LUC's attachment of the State LUC staff report with the December 20, 1971 permit approval letter. *See* Hayashi Deposition, July 25, 1988, at 33 (submitted as evidence by plaintiffs).

The court ruled at the original hearing on this matter that the defendants met their *T.W. Elec.* burden concerning the animus of defendant Lyman and his staff on the negligence issue; i.e., Lyman and his staff were not more than negligent in mistakenly enforcing the nonexistent fifth condition.

### C. Argument of Plaintiffs.

The plaintiffs characterize the same events and present the law very differently. The plaintiffs present five points of factual argumentation, repeated in pertinent part here:

1. The [County] Commission staff knew and reflected in their staff report [i.e., 8/12/86, not 12/71] the original permit [i.e., 10/14/71] ... had been amended [i.e., 11/14/71] to delete Condition 5. ...

2. This was the only amendment [citation omitted] and were informed by letter from the State Land Use Commission that the permit was approved "as amended" [citation omitted].

3. In the face of the obvious fact that Condition 5 had been deleted, the only fact supporting the Department's enforcement of Condition 5 was the recommendation of a staff report to the State Land Use Commission that Condition 5 be reinstated [citation omitted]. The Planning Commission staff knew the staff report was not binding [citation omitted] and they had the letter from the State saying the permit had been approved "as amended".

4. Defendants realized that the determinative question was: What had the State Land Use Commission done? [citation omitted]. Yet in their investigation they never communicated with the State Land Use Commission [citation omitted]. They never checked with any of the Planning Commission/Department personnel who had worked on the permit in 1971 [citation omitted]. *They ignored the plain fact that the permit had been amended, and had been approved as amended.*

5. They never gave critical information to the Commission, specifically the letter of December 20, 1971 [citation omitted]. The Commission, when considering the question, noted the record was incomplete—missing the one determinative fact—what had the State Land Use

Commission done. The acting Commission Chairman noted this during the meeting when considering the Souzas' request that they be allowed to continue in business:

But the State Land Use Commission approved it though they included it in, I *guess*. (Emphasis added.) [citation omitted]

There are two wrongs here: (a) the staff under Mr. Lyman's direction did not provide the Commission with the critical information that the amendment adopting the deletion of Condition 5 had been accepted by the State, and (b) the willingness of the Commission to go ahead and close a business based on a "guess". That conduct is gross negligence, deliberate indifference and denial of a person's substantive due process right prior to depriving him of his property.

Plaintiffs' Supp. Memo in Opp., at 4–6 (emphasis in original).

### D. Analysis of the Parties' Positions.

The plaintiffs conducted discovery after the original hearing on this matter. The plaintiffs present the above five points of argumentation as "significant probative evidence" that defendant Lyman and his staff were more than negligent in enforcing the nonexistent fifth condition. Each of the five points is addressed below.

### 1. First Point.

The plaintiffs argue the County Commission staff knew and reflected in their staff report of August 12, 1986 that the original permit of October 14, 1971 had been amended to delete the fifth condition. The August 1986 County Commission staff report stated: "At the request of the BCRCC, on November 11, 1971, the Planning Commission deleted Condition No. 5." The word "amended" is not used; "deleted" is. More importantly, the next sentence of the County Commission staff report stated: "At its meeting on December 17, 1971, the State Land Use Commission (LUC) approved the Special Permit with the original five conditions. The LUC Staff Report stated the following with regard to Condition 5...."

The County Commission believed in August 1986 that the State LUC had approved the permit with all five conditions, relying on the State LUC staff report attached to the State LUC approval letter to the County. The August 1986 County Commission staff report is consistent with the defendants' present position; namely, the County relied on the State LUC staff report to interpret the "as amended" language to mean the inclusion of the fifth condition after the County Commission had deleted it in November 1971.

### 2. Second Point.

The plaintiffs argue the November 11, 1971 deletion was the "only amendment," and the County was "informed by letter from the State Land Use Commission that the permit was approved 'as amended.'" Herein lies the crux of the court's determination of this motion. The court examines carefully five events of the fall of 1971.

1. October 14, 1971: The County Commission approved the permit with the fifth condition.

2. November 11, 1971: The County Commission deleted the fifth condition.

3. The State LUC staff prepared a report that recommended including the fifth condition. The final decision was recorded only in the minutes of the State LUC meeting.

4. The State LUC disregarded the staff report recommendation and approved the permit without the fifth condition.

5. The State LUC sent the County Commission a letter approving the permit "as amended," with a copy of the State LUC staff report that recommended including the fifth condition.

The plaintiffs argue the "as amended" language of the December 20, 1971 letter represented the "amendment" of the original permit that occurred at the November 11, 1971 County Commission meeting, where the County Commission deleted the fifth condition. The plaintiffs would have the court conclude the defendants were more than negligent because they knew the

"as amended" language meant the November 11, 1971 *deletion* of the fifth condition and they then enforced it anyway; or the defendants failed to investigate the meaning of the "as amended" language, which would have led them to the illuminating minutes of the State LUC meeting of December 17, 1971. The plaintiffs also argue the defendants were more than negligent in not providing the County Commission in 1986 with the State LUC approval letter of December 20, 1971, which they argue would have indicated what the State LUC did, i.e., approved the permit "as amended," the amendment being the November 11, 1971 deletion of the fifth condition.

As stated above, the defendants, however, argue they interpreted the "as amended" language to mean the State LUC adopted the recommendation of its staff report and amended the permit to include the fifth condition that the County Commission had deleted at its November 14, 1971 meeting. They argue the attachment of the staff report to the December 20, 1971 State LUC approval letter supported this interpretation. They argue there was no need to investigate the meaning of the "as amended" language, as the context, i.e., the State LUC staff report, clarified the "as amended" language.

The plaintiffs and defendants thus differ on what "as amended" referred to. The plaintiffs argue "as amended" could only have referred to the deletion of the fifth condition by the County Commission in November, 1971. The defendants argue they believed "as amended" referred to the State LUC's inclusion of the condition per the recommendation of its staff report, attached to the State LUC permit approval letter. This dispute can be illuminated with the following schema:

| Date | Status of #5 | Actor | Legal Effect |
|------|-------------|-------|-------------|
| 10/71 | 1. Included #5 | County | Not binding |
| 11/71 | 2. Deleted #5 | County | Not binding |
| 12/71 | 3. Included #5 | State LUC staff | Not binding |
| 12/71 | 4. Deleted #5 | State LUC | Binding |

The plaintiffs argue the "amendment" of the permit occurred at stage 2 in the approval process, where the County Commission *deleted* the fifth condition. The defendants argue the "amendment" of the permit occurred at 3, where the State LUC staff *reintroduced* the fifth condition.

Either position can be argued with varying degrees of cogency, but one thing is clear under the standards for summary judgment: Lyman and his staff were not more than negligent, if even negligent. The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg,* 815 F.2d at 1289 (citing *Liberty Lobby, Inc.,* 106 S.Ct. at 2512). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Eisenberg,* 815 F.2d at 1289. *Cf. Liberty Lobby,* 106 S.Ct. at 2513. On the evidence the plaintiffs have presented, a fair minded jury could not return a verdict that Lyman and his staff were more than negligent in their conduct based on the record available to them at the time.

3. Third Point.

The plaintiffs argue the County relied on the State LUC staff report in the face of the "obvious fact that Condition 5 had been deleted." The deletion of the fifth condition by the County Commission in November 1971, however, was not binding. The State LUC had final authority over the County's proposed permit. The plaintiffs then argue Lyman and his staff knew the State LUC staff report was not binding. The nonbinding effect of the State LUC staff report, however, is no more relevant than the nonbinding effect of the County Commission's proposed permit after the November 1971 meeting. The only binding event was the final decision of the State LUC on December 17, 1971, which decision was communicated to the County by the ambiguously worded State LUC approval letter of December 20, 1971. Lyman and his staff relied on the State LUC staff report attached to the State LUC approval letter to interpret the action of the State LUC at its December 17, 1971 meeting.

While the County Commission's reliance on the State LUC staff report was mistaken, this does not make it negligent, let alone more than negligent. People regu-

larly make noncritical inferences. Lyman and his staff noncritically inferred from the LUC staff report attached to the letter the State LUC sent them that the State LUC at its meeting had amended the permit to reintroduce the fifth condition into the permit. This noncritical inference was mistaken, but understandable.

#### 4. Fourth Point.

Fourth, the plaintiffs argue Lyman and his staff realized the determinative question concerned the State LUC's decision on the fifth condition, but they did not communicate with the State LUC. Lyman and his staff considered the meaning of the approval letter as clear from the State LUC's inclusion of its staff report. This was mistaken. Hindsight makes all men wise. The court, however, must view the conduct of Lyman and his staff in the light of the possibilities apparent to them at the time, not by looking backward. "The standard is one of conduct, not of consequences." W. Keeton, *Prosser and Keeton on Torts*, § 31, at 170 & n. 15 (1984). Viewing the conduct of Lyman and his staff from the vantage point at the time of their conduct, the plaintiffs have not submitted significant probative evidence to show Lyman and his staff were more than negligent, if even negligent.

#### 5. Fifth point.

Finally, the plaintiffs argue Lyman and his staff did not give the County Commission the December 20, 1971 approval letter from the State LUC when the County Commission considered amending the permit in August 1986 to remove the fifth condition all parties assumed was operative. If Lyman and his staff had given the County Commission the letter and the attached staff report, it is difficult to see how this would have changed the County Commission's decision. The same ambiguous language that confounded all the parties would have confronted the County Commission. Text without context is pretext. The context of the County Commission's meeting was a hearing to remove the fifth condition. The plaintiffs have not shown how context would not have overshadowed the plaintiffs' present reading of the letter, unaided by the hindsight now available to all. The plaintiffs themselves assumed the fifth condition was in effect.

#### E. Plaintiffs' Four "Points of Law."

The plaintiffs also present four "points of law," synopsized as:

1. The Supreme Court decisions *Daniels* and *Davidson* do not apply to these facts, because the defendants' conduct was deliberate.

2. The plaintiffs had property interests protected by the fourteenth amendment.

3. The manner in which the defendants took the plaintiffs' property deprived them of procedural and substantive due process.

4. Defendant Lyman's belief that the fifth condition was part of the permit was not reasonable and his claim of good faith must be rejected. Lyman's credibility is at issue because his deposition impeaches his affidavit.

Each "point of law" is discussed below.

#### 1. First "Point of Law."

The plaintiffs argue *Daniels* and *Davidson* are inapposite because the defendants' conduct was deliberate, not unintended as in *Daniels* and *Davidson*. In *Daniels* and *Davidson*, the Supreme Court held the protections afforded by the due process clause of the fourteenth amendment, whether procedural or substantive, are not implicated by a lack of due care on the part of state officials. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (prisoner brought suit in federal court under section 1983, seeking damages for injuries sustained when he slipped on a pillow he claimed was negligently left on a stairway by a prison guard); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (prisoner brought suit in federal court under section 1983, seeking damages for injuries he sustained because prison officials were negligent in protecting him from another inmate). The Court overruled *Parratt* to the extent *Parratt* held negligent conduct by a state official may "deprive" an individual of life, liberty,

or property under the fourteenth amendment. *Daniels,* 474 U.S. at 330–31, 106 S.Ct. at 664–65.

The standard that applies in this case is whether the conduct of Lyman and his staff was more than negligent. This court made this ruling in its Order Denying in Part and Continuing in Part Defendants' Motion for Summary Judgment, July 15, 1988:

> To prevent the court from granting the defendants summary judgment on the plaintiffs' due process claim, the plaintiffs must show there is a genuine issue of material fact that Lyman was more than negligent in enforcing the non-existent condition of the special permit. *See Daniels v. Williams,* 474 U.S. 327 [106 S.Ct. 662, 88 L.Ed.2d 662] (1986); *Davidson v. Cannon,* 474 U.S. 344 [106 S.Ct. 668, 88 L.Ed.2d 677] (1986). *Id.* at 3.

As a procedural matter, the plaintiffs did not move the court to reconsider this ruling under Fed.R.Civ.P. 60(b), nor have they met the requirements for reconsidering the court's order. *Cf. All Hawaii Tours Corp. v. Polynesian Cultural Center,* 116 F.R.D. 645, 649 (D.Haw.1987) (citations omitted) (standards for motion for reconsideration), *reversed in part on other grounds,* 855 F.2d 860, Nos. 87–2427/2619, slip op. (9th Cir. Aug. 16, 1988) (memorandum opinion) [table].

As a substantive matter, the plaintiffs' argument that the defendants' conduct was deliberate vis-a-vis the unintended in *Daniels* and *Davidson* lacks merit. The plaintiffs' argument is one of semantics. While Lyman and his staff may have made a conscious decision to enforce the non-existent condition, no genuine issue of material fact exists that Lyman and his staff noncritically and mistakenly inferred the "as amended" language in the December 20, 1971 approval letter from the State LUC to the County incorporated the "amendment" recommended by the State LUC staff report to include the fifth condition in the permit. The plaintiffs themselves submit this evidence, Hayashi Deposition, July 25, 1988, at 32–33.

■ This mistaken conduct is akin to the mistaken conduct by state officials in *Daniels* and *Davidson.* The prison guard in *Daniels* made a conscious decision to put a pillow in the stair case; he did not make a "conscious decision" to hurt the inmate by having the inmate slip on the pillow. *Daniels,* 474 U.S. at 328, 106 S.Ct. at 663. The prison officials in *Davidson* made a conscious decision not to protect the inmate when he gave them a note indicating he had been threatened by another inmate; the officials did not make a conscious decision the inmate be allowed to be harmed by the threatening inmate. *See Davidson,* 474 U.S. at 345, 106 S.Ct. at 669; *Davidson v. O'Lone,* 752 F.2d 817, 819 (3d Cir.1984) (en banc), *affirmed, Davidson.* In this matter, Lyman and his staff did not make a conscious decision to take the plaintiffs' property; they made a conscious decision the permit included the fifth condition based on the information before them, and they enforced it accordingly.

The court disregards this first "point of law."

2. Second "Point of Law."

■ The plaintiffs argue they had property interests protected by the fourteenth amendment. This is correct.

3. Third "Point of Law."

The plaintiffs argue the manner in which the defendants took their property deprived them of procedural and substantive due process. The test for both deprivations of due process is the more than negligence test of *Daniels* and *Davidson.* The above discussion indicates that under the standards for summary judgment the plaintiffs have not raised a material issue of fact that Lyman and his staff were not more than negligent, if negligent, in mistakenly enforcing the nonexistent fifth condition.

■ The plaintiffs also raise the issue of a procedural due process violation alleging that Lyman and his staff withheld important information from the County Commission when it considered deleting the (non-existent) fifth condition in August 1986. The plaintiffs encounter a difficult obstacle

in asserting a procedural due process violation: *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt*, the Supreme Court stated: "The usual rule has been '[w]here only property rights are involved, mere postponement of judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.'" *Id.* at 542, 101 S.Ct. at 1916 (citation omitted). In *Parratt*, the Court held a deprivation of property does not constitute a deprivation of procedural due process if the state provides adequate post-deprivation remedies. *Id.* at 543, 101 S.Ct. at 1917. *See Mann v. City of Tucson, Dept. of Police*, 782 F.2d 790, 792 (9th Cir.1986) (describing *Parratt*'s holding). *See also Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). Thus, if the unauthorized wrongful act is not sanctioned by any established state procedure and the state law provides a realistic means for the plaintiff to be made whole, there is no denial of procedural due process whether the defendants' actions are negligent or intentional.

■ The plaintiffs do not argue the injury arose from an established state procedure. Indeed, the injury appears to be the type of random wrongful act addressed in *Parratt* and its progeny, and which can be cured by the availability of a meaningful post-deprivation remedy.

The plaintiffs do not assert the state's post-deprivation remedies were inadequate. Haw.Rev.Stat. § 91–14 would have allowed the plaintiffs to judicial review of the defendants' action concerning the special permit. A state court remedy for their damage would also have been available.

The plaintiffs cite the court to *Wood v. Ostrander*, 851 F.2d 1212 (9th Cir.1988) for the proposition that *Parratt* does not apply where a plaintiff alleges a violation of substantive due process. The plaintiffs argue the relevant inquiry is whether the deprivation is sufficiently serious that "'the constitutional line ha[s] been crossed' so as to constitute a deprivation of substantive due process." *Id.* (citing *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1447 (9th Cir.

1986). The plaintiffs argue Lyman and his staff did not give the County Commission a copy of the December 20, 1971 State LUC approval letter when the County Commission was deciding in August 1986 whether to delete the fifth condition. The insignificance of this action was addressed above. The plaintiffs also argue Lyman and his staff did not notify the County Commission that the plaintiffs had permission to sell materials off site pending the County Commission's decision of whether to delete the fifth condition. (The plaintiffs were issued a cease and desist order by Lyman and his staff on July 11, 1986; it was suspended on August 5, 1986, pending the decision of the County Commission. The County Commission decided not to delete the condition on August 28, 1986.) The plaintiffs argue the County Commission decided not to delete the fifth condition because it believed the plaintiffs had been selling materials off site in violation of the fifth condition.

This is a strained argument of questionable relevance. The crux of this matter is the defendants' misapprehension concerning the existence of the fifth condition. The court has ruled there are no genuine issues of material fact that the defendants were not more than negligent in enforcing the fifth condition. The failure of Lyman and his staff to notify the County Commission of the plaintiffs' qualified right to sell materials off site pending the County Commission's decision is *de minimis* relative to the real matter at issue, i.e., the perceived status and enforcement of the fifth condition itself.

The discussion above indicates the defendants' enforcement of the nonexistent fifth condition was not a violation of substantive due process. Thus, the plaintiffs' reliance on *Wood* is ineffective. The plaintiffs would have had adequate post-deprivation remedies for the alleged procedural due process violations by Lyman and his staff in not having supplied the County Commission with the approval letter and notification of the plaintiffs' qualified permission to sell materials off site.

The court disregards this third "point of law."

### 4. Fourth "Point of Law."

The plaintiffs argue Lyman's belief that the fifth condition was part of the permit was not reasonable and his claim of good faith must be rejected. To maintain a section 1983 against the county defendants, the plaintiffs must prove the defendants were more than negligent in enforcing the fifth condition. The above discussion indicates an absence of material fact in dispute on this issue. Whether Lyman's conduct was reasonable does not impact on the more than negligence standard applicable to these defendants in a section 1983 suit.

The plaintiffs also argue Lyman's credibility is at issue because his deposition impeaches his affidavit. Again, the above discussion indicates the plaintiffs' have not met their *Commodity Futures* counterburden in raising a material issue of fact disputing Lyman and his staff were more than negligent in mistakenly enforcing the nonexistent condition. This failure disposed of the plaintiffs' section 1983 suit against all the defendants. The court need not address the issue of Lyman's affirmative defense of good faith immunity to the plaintiffs' claims.

The defendants' position concerning the "as amended" language is substantiated by evidence the plaintiffs submit. Hayashi Deposition, July 25, 1988, at 32–33. Another document submitted by the plaintiffs corroborates this position, County Planning Commission Staff Report, August, 12, 1986, Plaintiff's Supp. Memo in Opp., Exhibit J, at 2 ¶ 4. These establish the defendants' initial *T.W. Elec.* burden, independent of Lyman's affidavit. There is thus no need to consider Lyman's affidavit.

The court disregards this fourth "point of law."

### F. More than Negligence and Substantive Due Process Violation Standards.

The plaintiffs must meet their *Commodity Futures* burden in showing the defendants were more than negligent in enforcing the fifth condition. The defendants' conduct must have been grossly negligent, reckless, or deliberately indifferent. *Cf.* *Wood v. Ostrander*, 851 F.2d 1212 (9th Cir.1988). Gross negligence, the least culpable standard of the three, requires "a callous indifference or thoughtless disregard for the consequences of one's act or failure to act." *Cf. Smith v. Wade*, 461 U.S. 30, 33, 103 S.Ct. 1625, 1628, 75 L.Ed.2d 632 (1983). This more than negligence standard is amorphous, especially in the constitutional context. The *Wood* panel suggested the standard of culpability required for a deprivation of substantive due process must "shock the conscience." *Id.* at 1216 (citing *Rutherford v. City of Berkeley*, 780 F.2d at 1444, 1446 (9th Cir. 1986), which in turn cited *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). The *Rutherford* panel addressed the culpability required for a violation of substantive due process:

> The *Rochin* court reasoned that substantive due process is violated when the government engages in actions that "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." [citation omitted] The Court did not articulate what constitutes a substantive due process violation but concluded that it lies where government conduct "shocks the conscience" or constitutes force that is "brutal" and offends "even hardened sensibilities." [citations omitted] *Rutherford*, 780 F.2d at 1446.

The *Rutherford* panel also indicated violations giving rise to substantive due process violation claims are necessarily more egregious than simple tort actions. *Id.* (citation omitted).

The court must consider whether the conduct of Lyman and his staff was more than negligent. Did Lyman and his staff exhibit a callous indifference or thoughtless disregard for the consequences of their conduct? In the constitutional context, did their conduct "shock the conscience"?

Under the pertinent standards for summary judgment, reasonable minds could not differ as to the import of the evidence here. *Eisenberg*, 815 F.2d at 1289; *Liberty Lobby*, 106 S.Ct. at 2513. A fair minded jury

could not find the conduct of Lyman and his staff exhibited a callous indifference or thoughtless disregard for the consequences of their conduct. Nor could a fair minded jury find that the conduct of Lyman and his staff "shocks the conscience."

### G. Plaintiffs' Lingering Fifth Amendment Claim.

 The plaintiffs assert their suit is based on the fifth amendment, and if the fourteenth amendment due process clause does not apply, then they can rely on the fifth amendment due process clause. The only fifth amendment clause that could apply in this suit is the fifth amendment due process clause. The due process clause of the fifth amendment, however, only applies to action by the federal government. *Cf. Bowles v. Willingham*, 321 U.S. 503, 518, 64 S.Ct. 641, 649, 88 L.Ed. 892 (1944); *Feldman v. United States*, 322 U.S. 487, 490, 64 S.Ct. 1082, 1083, 88 L.Ed. 1408 (1944). This is a fundamental principle of constitutional law. To the extent case authority is needed, *Popow v. City of Margate*, 476 F.Supp. 1237 (D.N.J.1979), is directly on point: "The fifth amendment applies to the federal government and not to the state. It does not expand the plaintiff's fourteenth amendment due process rights against the state." *Id.* at 1242 n. 2. The fifth amendment has no application to the plaintiffs' section 1983 suit. This leaves only the fourteenth amendment due process clause to support the plaintiffs' suit, which was disregarded above.

### H. Dismissal of the Plaintiffs' Pendent State Law Claims.

The court has granted the defendants summary judgment on the plaintiffs' federal claims. Dismissal of any pendent state claims is appropriate. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

### III. CONCLUSION

The court grants the defendants summary judgment on the plaintiffs' federal claims. The court dismisses the plaintiffs' pendent state claims.

IT IS SO ORDERED.