**TEAMSTERS FREIGHT CHECKERS, CLERICAL EMPLOYEES AND HELPERS LOCAL UNION NO. 856, Plaintiff,**

v.

**NABISCO BRANDS, INC., Defendant.**

No. C–93–3863 CW.

United States District Court, N.D. California.

April 26, 1994.

Andrew H. Baker, Beeson Tayer & Bodine, San Francisco, CA, for plaintiff.

Mark I. Schickman, Fox and Grove, Chartered, San Francisco, CA, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

WILKEN, District Judge.

### I. BACKGROUND

Plaintiff seeks an order compelling arbitration pursuant to a collective bargaining agreement of a dispute over Defendant's termination of Vaughn Roberts, an employee covered by the agreement. Plaintiff filed a grievance protesting Roberts' discharge, and Defendant has declined to continue processing the grievance to arbitration, citing Roberts' alleged "unclean hands".

### II. FACTS

After Roberts' termination, Plaintiff and Defendant began the grievance process established by their collective bargaining agreement.[1] Plaintiff and Defendant sched-

---

1. The grievance procedure set out in the Collective Bargaining Agreement is as follows: *Step 1:* employee or shop steward presents complaint to supervisor; management representative gives an oral reply. *Step 2:* if not settled, referred to the Department Head. *Step 3:* if not settled, referred to the Personnel Manager. *Step 4:* if not settled, appealed to the Plant Manager. *Step 5:* if the grievance has been submitted but not adjusted under Step 4, the Company or Union may request that the grievance be submitted to an arbitrator. If the grievance involves discharge or suspension only, an adjustment board consisting of two members selected by the Union and two members selected by the Company may be convened. The decision of this board shall be final and binding upon the parties. If the board is unable to agree upon a majority decision, the matter may be referred to arbitration. The decision of the arbitrator shall be final and binding.

uled a meeting before the Adjustment Board for July 20, 1993. Defendant postponed the July 20th meeting with the Adjustment Board, and, by letter dated September 30, 1993, advised Plaintiff that it would no longer process the termination grievance. Defendant claimed that Roberts either stole or knowingly received stolen documents from Nabisco's litigation files during the grievance process. Defendant also now alleges that Mr. Roberts threatened the lives of two of its employees, and sent a letter, charging Defendant with a covert conspiracy to terminate him on account of a work-related injury, to a number of Nabisco facilities.

### III. STANDARD FOR GRANTING SUMMARY JUDGMENT

■ Summary judgment is properly granted when no genuine and disputed issues of material fact remain; or, when viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288–89 (9th Cir.1987).

■ The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Eisenberg*, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident and Ins. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991).

■ Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### IV. DISCUSSION

■ Defendant argues that it need not arbitrate the disputed labor issue because Mr. Roberts has "unclean hands", due to his alleged theft or receipt of stolen documents, his threatening comments about other employees, and his letter to various Nabisco facilities.

Defendant contends that it would be inimical to the arbitration process, and a waiver of the attorney-client privilege, if Mr. Roberts were allowed to utilize the improperly obtained documents from the Nabisco files in arbitration. Because of Mr. Robert's alleged threats, Defendant is reluctant to require its employees to be in the same room with Mr. Roberts for an adjustment or arbitration proceeding, which, Defendant contends, undercuts the arbitration process. Defendant argues that the distribution of the letter further undermines the arbitration efforts.

In support of its refusal to arbitrate, Defendant cites a case from the Eastern District of Missouri. *Teamsters, Local 688 v. Crane Co.*, 96 L.R.R.M. (BNA) 3184, 1977 WL 1745 (E.D.Mo.1977) (hereinafter "Local 688"). In that case, the employer, the Union, and the employee, Jesse Dale, Jr., presented their case to a neutral arbitrator. *Id.* at 3185. After hearing arguments in mid–February 1976, the arbitrator informed both parties that he would contact them at a later date to inform them of his decision. *Id.* By late February, the arbitrator had received over 20 calls from a person identifying himself as Jesse Dale, Jr. *Id.* The arbitrator directed that the calls not be forwarded to him, and called the Union attorney, insisting that the calls stop. *Id.* The calls continued, and a person claiming to be Dale also visited the arbitrator's office. *Id.* On March 12, the arbitrator withdrew, stating that he could no longer remain neutral in the matter. *Id.* In April, the union notified the defendant that they wanted to arbitrate again. *Id.* The defendant refused to participate in any future arbitration. *Id.* The following July, defendant Crane Co.'s primary witness in the arbitration resigned from the company and moved out of state, making him for all practical purposes unavailable for future testimony. *Id.* The court found that the calls and

visit were made by Dale, and held that "to require arbitration here would allow Dale to benefit from his wrongdoing. His conduct, and his alone, kept the initial arbitration attempt from succeeding. Dale does not seek equitable relief with clean hands." *Id.* at 3185–86.

*Local 688* is not binding on this Court. Further, there are several differences between that case and the case at bar. First, in *Local 688*, the employer did not breach its duty to arbitrate. The company did, in fact, arbitrate the labor dispute. Only after the employee made it impossible for the arbitrator to render his decision, did the employer refuse the union's request for further arbitration. Here, Defendant refuses to participate in the Adjustment Board hearing or to arbitrate. Secondly, in *Local 688* it was the neutral arbitrator, not the employer, who determined that the conduct of the employee was inappropriate.

Most importantly, the employee's conduct in *Local 688* directly thwarted the arbitration process, rendering the arbitrator who had heard the case unable to make his decision. The arbitration could not be repeated before a new, unaffected arbitrator without prejudice to the employer, since the employer's chief witness had become unavailable in the intervening time.

Here, assuming Defendant's factual allegations to be true, and examining the evidence in light most favorable to Defendant, Mr. Roberts' alleged actions do not affect the neutrality of the arbitrator or thwart the arbitration process. As Plaintiff argues, the post-discharge issues here are evidentiary and procedural matters which can be resolved by the arbitrator. The arbitrator can determine whether files were stolen and/or privileged, and refuse to consider them if they are. Moreover, Plaintiff has agreed not to use these documents. It does not appear that Mr. Roberts' letter would have any prejudicial effect on the arbitrator. And presumably if the arbitrator finds misconduct to have occurred she could take it into account in her decision as to the termination. The Adjustment Board and the arbitrator can establish appropriate security procedures for the protection of the employer's witnesses.

## IV. *CONCLUSION*

Although there are facts in dispute, there is no material factual dispute, since, even assuming all of Defendant's factual allegations to be true, and examining the evidence in the light most favorable to Defendant, Defendant's refusal to arbitrate is unjustified. Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED. Defendant shall submit Plaintiff's grievance protesting Defendant's termination of its employee Vaughn Roberts, including all procedural issues of arbitrability arising in connection with that grievance, to an Adjustment Board hearing, and, absent resolution at that stage, to a mutually selected impartial arbitrator, pursuant to the grievance-arbitration procedures contained in the parties' 1991–1994 collective bargaining agreement.

Judgment for Plaintiff shall enter in accordance with this order, with costs to Plaintiff.

IT IS SO ORDERED.